In the Matter of Timothy Robert
HALE, Kelly Ann Hale, Debtors.

Bankruptcy No. 186–00320.

United States Bankruptcy Court,
S.D. Georgia,
Augusta Division.

Oct. 6, 1986.

V. Lee Ringler, Augusta, Ga., for debtors.

## ORDER ON CONFIRMATION

LAMAR W. DAVIS, JR., Bankruptcy
Judge.

A hearing on confirmation of the Debtors' Chapter 13 case was held on September 18, 1986. There was no written objection filed to confirmation by the Trustee, any creditor or any party in interest. The Trustee, however, verbally objected to confirmation at the hearing.[1] The Court, based on the Trustee's analysis of the plan, began an inquiry into the question of whether the plan was proposed in "good faith" as required by 11 U.S.C. Section 1325(a)(3). Following the Court's inquiry, Debtors' counsel moved for confirmation of their Chapter 13 plan asserting that Debtors' proposed to pay all of their "projected disposable income" for three years to the plan as contemplated by 11 U.S.C. Section 1325(b)(1). He argued that meeting said test is conclusive on the issue of confirmation and precludes this Court from inquiring into the confirmation criteria of Section 1325(a). Debtors thus squarely pose the question of what effect the passage of 11 U.S.C. Section 1325(b) as part of the 1984 Amendments to the Bankruptcy Code had on prior case law interpreting 11 U.S.C. Section 1325(a)(3) which provides in part that "the court shall confirm a plan if ...

---

1. Although the objection was not filed and served as required by Bankruptcy Rule 3020, Debtor did not object to hearing the matter on procedural grounds, and is deemed to have waived any objection. In any event, because I conclude that the Court has the right to inquire into the question of good faith, even in the absence of an objection, the procedural question does not prevent my deciding the matter before me.

the plan has been proposed in good faith ...".

## FINDINGS OF FACT

The Debtors proposed a plan which called for payments of $324.00 per month for a period of thirty-six months. The Chapter 13 Trustee's analysis of the plan reveals that it would result in a total "pay in amount" of $11,664.00 with estimated administrative costs of $1,094.19, total payments to secured creditors of $10,341.85 and a distribution to unsecured creditors of $227.96 or 2% of the unsecured claims filed. Debtors' unsecured debts consist of a bank loan of $1,070.71 of which $25.00 will be paid, a doctor's bill for $50.89 of which $1.19 will be paid, a deficiency balance following repossession of a car in the amount of $2,677.08 of which $62.52 will be paid and a series of student loans totalling $5,936.02 of which $139.25 will be paid. These projected distributions to unsecured claimants will be made over the three year period of time the plan will operate.

Debtors' monthly take-home pay is $1,771.10 and their estimated living expenses are $1,443.00 which leaves $328.10 to fund the plan. They propose to pay $324.00 per month to the Chapter 13 Trustee. The husband is employed as a draftsman, having earned a two year degree in architectural engineering. The wife is a homemaker, and is not working outside the home.

## CONCLUSIONS OF LAW

■ Following passage of the Bankruptcy Code of 1978 much litigation ensued over the "good faith" requirement of Section 1325(a)(3). Some courts held that the good faith standard was met, even if the proposed distribution to creditors was minimal or non-existent, so long as the plan met the requirements of Section 1325(a)(4) *i.e.*, that the Chapter 13 creditors were receiving at least as much as they would in a hypothetical Chapter 7 liquidation. Other courts held that good faith was lacking if the plan failed to provide "substantial" or "meaningful" distributions to unsecured creditors. Compare *In re Heard*, 6 B.R. 876, 881 (B.C.W.D.Ky.1980) with *In re Sadler*, 3 B.R. 536 (B.C.E.D.Ark.1980). See discussion in *U.S. v. Estus*, 695 F.2d 311 (8th Cir., 1982). Ultimately a number of circuit courts adopted a middle of the road test for measuring good faith. *Estus, supra* at 316; *In re Rimgale*, 669 F.2d 426, 431–32 (7th Cir., 1982); *Flygare v. Boulden*, 709 F.2d 1344, 1347–48 (10th Cir., 1983); *Deans v. O'Donnell*, 692 F.2d 968, 971–72 (4th Cir., 1982); *Goeb v. Heid*, 675 F.2d 1386, 1389–90 (9th Cir., 1982). These decisions rejected the "substantial repayment" test and also rejected the "simple arithmetic minimum" of Section 1325(a)(4) and established non-exclusive criteria by which good faith would thereafter be measured on a case-by-case inquiry by the Bankruptcy court. *Kitchens v. Georgia Railroad Bank & Trust Co.*, 702 F.2d 885 (11th Cir., 1983).

> The general rule now established is that "A comprehensive definition of good faith is not practical. Broadly speaking, the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose or spirit of [Chapter 13] in the proposal." *Id.* at 888.

The District Court, in the *Kitchens* case, reviewed the long history of Chapter 13 and the predecessor "Wage Earner" plans and concluded that the spirit and purpose of Chapter 13 is rehabilitation through repayment of debt.

> "The use of this 'good faith' in the current legislation is too synonymous and too closely related with the historical concepts and prior statutory language to be merely coincidental. It should not be subject to a different interpretation. Accordingly, 'good faith' as used in section 1325(a)(3) of the Bankruptcy Code requires that a debtor be committed to the purpose and spirit of Chapter 13. The purpose and spirit of Chapter 13 is rehabilitation and repayment."

*In re Kitchens*, 12 B.R. 654 at 658 (D.C.S. D.Ga., 1981).

According to *Kitchens,* factors to be considered on the question of good faith include:

"1) the amount of the debtor's income from all sources;

2) the living expenses of the debtor and his dependents;

3) the amount of attorney's fees;

4) the probable or expected duration of the debtor's Chapter 13 plan;

5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

6) the debtor's degree of effort;

7) the debtor's ability to earn and the likelihood of fluctuation in his earnings;

8) special circumstances such as inordinate medical expenses;

9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors;

10) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors;

11) the burden which the plan's administration would place on the trustee."

Substantiality of repayment and potential nondischargeability of the debt in Chapter 7 were also approved as two additional factors to be considered. *Kitchens, supra,* 702 F.2d at 889.

In 1984, Congress adopted an amendment to 11 U.S.C. Section 1325, codified as subsection (b)(1), which provides in relevant part:

"(b)(1) If the trustee or holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan."

The statute goes on to define disposable income as income received by the debtor which is not reasonably necessary to the maintenance or support of the debtor or debtor's dependents. In this case, Debtor's counsel would have this Court adopt a rule which converts Section 1325(b)(1) from a prohibition against confirming plans when that minimum standard is not met into a mandate that any plan which meets that minimum standard should be confirmed.

The passage of Section 1325(b)(1) does nothing, in my judgment, to alter the thrust of the *Kitchens* line of cases that this Court is charged with the duty of making a case-by-case inquiry to determine whether the proposed Chapter 13 plan meets the statutory criteria including "good faith". There is no significant legislative history to guide litigants and the courts in interpreting Section 1325(b)(1). Nor has binding precedent been found construing the relationship between Section 1325(a)(3) and (b)(1).[2] Accordingly, it is a matter of pure statutory construction.

On its face, the language does not require the court to confirm every plan, regardless of other facts, when the three years, disposable earnings test is met. Rather, Section 1325(b)(1) is an *exception* to Section 1325(a)(1–6) which sets forth the criteria which, if found to exist, *require* the court to confirm a plan. That is, a plan which meets the tests for mandatory confirmation, including "good faith" still *cannot be confirmed,* if after objection, the disposable earnings test is not met. Thus,

---

**2.** Counsel for Debtor has cited the case of *In re Red,* 14 C.B.C. 2d 696, 60 B.R. 113 (E.D.TN., 1986) in support of his argument that Section 1325(b)(1) precludes any further inquiry into the substantiality of repayment question as part of the good faith analysis. I decline to follow *Red,* in part, because the part of the opinion relied on by Debtor is *dictum,* in that the Debtor failed the disposable income test and the case was not confirmable for that reason alone. Further, by passage of Section 1325(b)(1), I believe Congress established a *minimum effort* requirement for debtors. This did not dispose of the need for an analysis as to whether that minimum effort *results* in a meaningful repayment to creditors, an essential element of good faith under existing case law.

Section 1325(b)(1) can be viewed only as a floor below which no plan can go and still be confirmed, even if the general good faith test is fully met to the satisfaction of the Bankruptcy Judge. It is a "fail-safe" mechanism to insure some uniformity in the minimum effort that will be required of debtors, even when their good faith is not questioned. However, to constitute a "good faith" proposal, under the controlling decisions, I believe it is still necessary to measure the result in dollar terms of the debtor's effort. In short, substantiality of repayment remains a relevant factor in deciding "good faith". In the case at bar I conclude that the Debtors have failed to meet the "good faith" requirement of Section 1325(a)(3) for a number of reasons.

## APPLICATION OF THE KITCHENS CRITERIA

### (a) Substantiality of Payment

■ It should be noted that the plan provides minuscule dividends of 2% for unsecured creditors, deferred over 36 months; for example, one creditor will receive an average dividend of $.03 per month; another will get a mere $.69 per month. The creditors' cost of processing and crediting such payments will doubtless more than offset the small amounts received. Thus, the plan proposes the sort of low percentage which alerts the Bankruptcy Court to inquire further into the Debtors' good faith. *Estus, supra,* at 317. "Congress never intended, of course, that Chapter 13 serves as a haven for debtors who wish to receive a discharge of unsecured debts without making an honest effort to pay those debts." *Deans, supra* at 972; *Flygare, supra* at 1347; *Goeb, supra* at 1391.

### (b) Duration of the Plan

Next it is noteworthy that Debtors have not elected to extend their plan beyond three years as they are permitted to do. Every single month beyond three years that they might have chosen to extend their plan would result in a larger distribution ($324.00) *for that month* than the total

unsecured distribution ($227.96) that would be paid over 36 months under their plan. If they chose to stay in the plan the full 60 months, approximately 80% of all unsecured claims would be paid.

### (c) Special Circumstances

No evidence of special circumstances such as inordinate medical expenses, loss of employment, disability, uninsured fire loss or the like have been demonstrated that would explain the necessity for the plan as proposed.

### (d) Dealings with Creditors

The largest single unsecured claim in this case is a debt in the amount of $5,963.02 due the United States Department of Education on a series of guaranteed educational loans. This is the type of debt that might very well not be discharged in a Chapter 7 liquidation pursuant to 11 U.S.C. Section 523(a)(8). This one claim amounts to over 60% of the unsecured claims which would be "adjusted" in Debtors' proposed plan. Since all the secured debt will be paid in full under the plan, it appears that the primary motivation for Chapter 13 relief is to avoid repayment of the student loan. "This is yet another factor to which bankruptcy courts should be alert." *Kitchens, supra,* 702 F.2d at 889; *In re Nkanang,* 44 B.R. 955 (N.D.Ga., 1984); *Estus, supra* at 317. I find the attempt to avoid repayment of student loans particularly unseemly when the debtor is actually working and using the skills gained at least in part with the aid of such loans, but choses to divert most of the income devoted to the plan not to repay these loans but to the purchase of two vehicles, one of them a 1986 model.

### (e) Debtors' Income and Expenses

Debtors enjoy substantial income of $31,000.00 per year. Both are in apparent good health and compared to the vast majority of debtors in this court are enjoying the "good life". They own two automobiles and pay high enough rent to suggest that they are living very comfortably. While there is no clear evidence to support a finding that they have understated their

income or overstated expenses, it is clear from examining their budget that they have not reduced their standard of living to maximize the plan's distribution.

### CONCLUSION

None of the factors, standing alone, under the applicable authorities would be sufficient to find that good faith is lacking. However, in consideration of all the factors discussed, I conclude that Debtors' plan is not proposed in good faith and confirmation must be denied.

■ Debtors have not demonstrated a commitment to the "spirit and purpose" of Chapter 13 in dealing with their creditors in this plan. Notwithstanding Debtors' counsel's articulate argument that the court has no right to inquire into the question of good faith I find an affirmative duty in 11 U.S.C. Section 1325 to do so, and ample precedent as well.

"We hold that with section 1325(a)(3) Congress intended to provide bankruptcy courts with a discretionary means to preserve the bankruptcy process for its intended purpose. Accordingly, whenever a Chapter 13 petition appears to be tainted with a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the debtor's motives. If the court discovers unmistakable manifestations of bad faith, as we do here, confirmation must be denied. Unmistakable manifestations of bad faith need not be based upon a finding of actual fraud, requiring proof of malice, scienter or an intent to defraud. We simply require that the bankruptcy court preserve the integrity of the bankruptcy process by refusing to condone its abuse. The cornerstone of the bankruptcy courts has always been the doing of equity. The protections and forgiveness inherent in the bankruptcy laws surely require conduct consistent with the concepts of basic honesty. Good faith or basic honesty is the very antithesis of attempting to circumvent a legal obligation through a technicality of the law."

*In re Waldron*, 785 F.2d 936, 941 (11th Cir., 1986). See also, *Flygare, supra* at 1347; *Estes, supra* at 316–17; *In re Rimgale, supra* at 431–32.

In view of the above authorities there is no doubt that the Court, independent of any creditor action, must make the good faith determination. Confirmation would become a ministerial function rather than a judicial one if the Debtors' position were adopted as it relates to confirmation.

"It should be noted here that Chapter 13 provides that the bankruptcy judge shall preside over confirmation proceedings. If confirmation depended entirely upon arthimetical computations or the absence of illegal activity in the case, there would be no need for a judge. Confirmation of a Chapter 13 plan requires the exercise of judicial discretion and assessment of evidence by a bankruptcy judge. The good faith requirement is one of the central, perhaps the most important confirmation finding to be made by the court in any Chapter 13 case."

*Kitchens, supra* 12 B.R. at 658.

This case will not be dismissed in the absence of a motion on the part of some party in interest. 11 U.S.C. Section 1307(c); *In re Moog*, 774 F.2d 1073 (11th Cir., 1985).

### ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law IT IS THE ORDER OF THIS COURT that confirmation of the Debtors' plan is denied.