**In re Ayalew ADAMU Vicki Adamu, Debtors.**

**Bankruptcy No. 387–05460–H13.**

United States Bankruptcy Court, D. Oregon.

Jan. 26, 1988.

Diane L. Gruber, Portland, Or., for debtors.

Mary Lou Calvin, Asst. Atty. Gen., Salem, Or., for the State of Or., for objecting creditors.

MEMORANDUM OPINION

HENRY L. HESS, Jr., Chief Judge.

On December 28, 1987, an order of confirmation was entered in this Chapter 13 case. This memorandum opinion will reflect the rulings of the court upon objections to confirmation made on behalf of the Oregon Department of Higher Education and the Oregon State Scholarship Commission, hereafter referred to as the objecting creditors.

At the hearing on confirmation the debtors were represented by Diane L. Gruber and the objecting creditors were represented by Mary Lou Calvin, Assistant Attorney General for the State of Oregon.

The Chapter 13 Statement filed by the debtors on October 16, 1987, showed that at that time the husband, Ayalew Adamu, was unemployed and that the wife, Vicki Adamu, was employed as a secretary with a monthly take home pay of $827.24. The debtors listed their monthly expenses as $727.00 leaving disposable earnings of $100 per month. The amended plan dated October 16, 1987, filed by the debtors provided that they would pay the trustee $100 per month for 36 months and estimated that the dividends upon the general unsecured claims would be approximately 6%. The plan also provided that "Debtors must give quarterly reports regarding employment efforts to the trustee."

At the confirmation hearing the plan was amended to provide that the quarterly reports were to begin at the end of March 31, 1988 and would include the debtors' current income and expenses.

The Chapter 13 Statement showed no secured claims, no priority unsecured claims, but showed general unsecured claims totalling $54,195.53 of which $43,-364.28 represented student loan debt.

Prior to the hearing upon confirmation the objecting creditors filed written objections to the debtors' plan. They contended in the written objections and at the hearing upon confirmation that the plan was not in good faith and therefore did not meet the test required by 11 U.S.C. § 1325(a)(3). No

other statutory ground for refusing confirmation was argued.

In support of the contention that the plan was not in good faith, it was argued that the husband was unemployed and the wife was underemployed at the time of filing, that the debtors were not making reasonable efforts to become employed at jobs which would utilize the college degrees they had obtained, that the debtors had made only one small payment upon the student loan debts prior to the filing their Chapter 13 case, and that 80% of the total debt constituted student loans which might not be dischargeable in a Chapter 7 case. No assertion was made that the debtors' budget was incorrect or that the debtor's net disposable earnings exceeded $100 per month. No evidence was presented that the debtors were not making reasonable effort to seek employment, in the husband's case, or better employment, in the wife's case. No evidence was offered that the debtors were financially capable of making payments upon the student loans prior to the filing of the case. No evidence was offered to show that the debtors had engaged in any inequitable conduct in obtaining the student loans or in the incurring of any of the other debts.[1]

While the objecting creditors placed great stress upon the factors which the courts outlined as being relevant to the question of good faith in the cases of *In re Estus*, 695 F.2d 311 (8th Cir.1982) and *In re Goeb*, 675 F.2d 1386 (9th Cir.1982), they only point to two of the several factors which those cases say may be considered. One is "the debtor's employment history, ability to earn and likelihood of future increases in income." The possibility that there may be future increases in income with consequent ability to make larger payments to the trustee through a modified plan filed by the debtors or the objecting creditors, has been provided for by the amendment contained in the order of confirmation requiring the filing of quarterly reports by the debtors. The other factor is "the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7." Thus the argument of the objecting creditors boils down to a contention that any plan which provides for only a small dividend upon unsecured claims is in bad faith if a substantial part of the debt consists of debts which would not be dischargeable in a Chapter 7 case.

There are reported cases from bankruptcy courts holding that a plan is not in good faith because the dividend to be paid upon general unsecured claims was a certain percentage which the court did not believe was sufficient, or because the court did not consider the amount to be paid upon such claims was substantial or meaningful. Other bankruptcy courts have held that there is no fixed minimum percentage which must be paid upon unsecured claims in order for a plan to be in good faith. This court has found no case decided by a Court of Appeals which has held that a plan is not in good faith solely because it fails to provide a substantial dividend upon unsecured claims. The Ninth Circuit Court of Appeals prior to the 1984 amendments expressly rejected such a test.

"In conclusion, we decline to impose a substantial-repayment requirement because (1) it is contrary to the language of the statute, (2) whether it would best further the purposes of the Bankruptcy Code is uncertain, and (3) Congress is aware of the perceived deficiency in § 1325(a). Rather than set a rigid standard under the guise of interpreting "good faith", we deem it advisable to apply the law as written and wait for Congress to create, if it chooses, further conditions for the confirmation of Chapter 13 plans." *In re Goeb*, 675 F.2d 1386, 1389 (9th Cir.1982).

In 1984 Congress amended § 1325 by adding what is now § 1325(b). This section provides that upon objection by the holder of an allowed unsecured claim, the court

---

1. While a transcript of the § 341(a) meeting of creditors held on December 1, 1987, was filed on January 4, 1988, the transcript was not offered in evidence and was not available to the court at the time of the confirmation hearing on December 17, 1987 nor at the time the order of confirmation was filed on December 28, 1987.

may not approve the plan unless it provides that all of the debtor's projected disposable income to be received in the three year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan. "Disposable income" is that part of the income "which is not reasonably necessary ... for the maintenance or support of the debtor or a dependent of the debtor...."

While the statute is expressed in the negative, the court believes that if the plan commits the disposable income for a period of thirty six months, this is strong evidence of good faith. It should be noted that the amendment does not state that upon objection a plan should not be approved if it fails to return substantial or meaningful dividends upon unsecured claims. Congress has not said that to be eligible for relief under Chapter 13 the debtor must have sufficient income to return a substantial dividend to the holders of unsecured claims.

"[T]he 1984 amendments to the Code finally resolve the issue of whether any particular amount must be paid to unsecured creditors above that required by the best interest test [§ 1325(a)(4)]. Since Congress has now dealt with the issue quite specifically in the ability-to-pay provisions, there is no longer any reason for the amount of a debtor's payments to be considered even a part of the good faith standard." 5 L. King, *Collier on Bankruptcy*, ¶ 1325.04[3], (15th ed. 1987).

The only remaining argument against confirmation in this case is that some 80% of the debt consists of student loans. Congress has provided in § 1325 the tests which, if met by the plan, require the court to confirm the plan. That some of the debts would be nondischargeable in a Chapter 7 case is not one of the stated tests. The objecting creditors here argue that to deal with such debts is evidence of bad faith. But Congress provided in § 1328(a) that upon completion of the plan the court shall enter a discharge of all debts except for those provided for under § 1322(b)(5) and § 523(a)(5). Obviously this section was not enacted for the benefit of the holders of claims which would not be dischargeable in a Chapter 7 case. Equally obvious it was enacted for the benefit of debtors who choose to obligate future income to the payment of debts, rather than merely surrender non-exempt assets to a trustee as in a Chapter 7 case. It appears to have been intended to encourage the use of Chapter 13 by debtors. It is difficult for the court to find that it is bad faith on the part of an individual to utilize a statute which was passed for his benefit. To argue otherwise would make about as much sense to say that a taxpayer acts in bad faith when he claims a lawful deduction on his income tax return.

While this court has no argument with § 1328(a), it can understand the difficulty facing a judge who believes that it was not sociologically wise for Congress to provide that a debtor in a Chapter 13 case can discharge a debt that would not be dischargeable in a case under Chapter 7. But if we are to read into the statutes requirements not stated, or even implied, therein, what new tests should the courts impose? If inclusion of a debt that would not be dischargeable in a Chapter 7 liquidation is to be considered in determining whether a plan is in good faith, should it make a difference why the debt would not be dischargeable? Should it make a difference that a small sum was embezzled from a bank or a large sum embezzled from a retired person of modest means. Should it make a difference that the debt arose out of the giving of a false financial statement or out of the making of a student loan? Does the size of the nondischargeable debt make a difference? Should it make a difference what percentage of the total unsecured debt is made up by a nondischargeable debt? What is the maximum percentage permissible? If a court is tempted to legislate, it should have answers to these questions.

"Moreover, by dealing specifically in other provisions with new problems which were perceived to require a redefinition of good faith under the Code, including not only the amount of Chapter 13 payments to unsecured creditors but also the

issue of repetitive bankruptcies [§ 109(g)], Congress has made clear its intentions that the term good faith should not be expanded beyond the meaning it traditionally had. Only where there is a showing of serious debtor misconduct or abuse should a Chapter 13 plan be found lacking in good faith." *Collier on Bankruptcy, supra* at § 1325.04[3].

The court therefore concludes that the debtors' plan is in good faith and that it was appropriate for the court to enter an order confirming it with the amendments which were incorporated in the order.