In re Laurie Ann SELDEN,
Debtor–Appellee.

STATE OF OREGON, HIGHER EDU-
CATION ASSISTANCE FOUNDATION
and Hemar Insurance Corporation of
America, Appellants,

v.

Laurie Ann SELDEN, Appellee.

No. 389–32535–H13.

United States District Court,
D. Oregon.

Oct. 26, 1990.

Wayne Godare, Snyder Bankruptcy Legal Services, Portland, Or., for appellee.

Dave Frohnmayer, Atty. Gen., Daniel H. Rosenhouse, Asst. Atty. Gen., Dept. of Justice, Portland, Or., for State of Or.

Stephen Tweet, Churchill, Leonard, Brown & Donaldson, Salem, Or., for appellants, Heaf and Hemar.

## OPINION

PANNER, District Judge.

Appellants Oregon State Scholarship Commission, Hemar Insurance Corporation of America, and Higher Education Assistance Foundation (objecting creditors) appeal the bankruptcy court's order confirming debtor Laurie Ann Selden's (debtor) chapter 13 plan. Appellants contend the bankruptcy court erred in finding that debtor filed the plan in good faith and failed to follow controlling precedent in making that determination. I have jurisdiction under 28 U.S.C. § 158. I affirm.

## BACKGROUND

On June 6, 1989, debtor filed a petition for chapter 13 protection and a chapter 13 plan. Debtor is a Multnomah County deputy district attorney. Debtor borrowed approximately $42,500 in student loans from the objecting creditors for attending law school. Debtor has no secured or priority

unsecured claims. The student loans are general unsecured claims.

Debtor is a single parent of two children. Her net monthly income from her deputy district attorney position at the time of the confirmation hearing was $1,683. The chapter 13 plan provides that debtor will pay the trustee $140 per month for 36 months, giving the general unsecured creditors dividends of about 4%. The plan requires debtor to file quarterly income and expense reports with the trustee and objecting creditors. Debtor must also pay the trustee any income tax refunds received during the life of the plan.

On August 8, 1989 and January 23, 1990, objecting creditors filed objections to debtor's plan, contending that it was not in good faith as required by 11 U.S.C. § 1325(a)(3). The bankruptcy court held a confirmation hearing on January 23, 1990. On May 18, 1990, the court issued an order and supporting opinion confirming the plan with modifications.

## STANDARDS

The district court acts as an appellate court when reviewing a bankruptcy court judgment. *Daniels–Head & Assoc. v. William M. Mercer, Inc. (In re Daniels–Head & Assoc.)*, 819 F.2d 914, 918 (9th Cir.1987). Findings of fact are reviewed under the clearly erroneous standard and conclusions of law de novo. *Id.*

## DISCUSSION

The objecting creditors contend that the bankruptcy court applied the wrong standard to determine good faith.

### I. *Good Faith Determination*

■ Section 1325 requires the bankruptcy court to confirm a chapter 13 plan if "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). In determining good faith, the court reviews the totality of the circumstances, including "whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner." *Goeb v. Heid*

*(In re Goeb)*, 675 F.2d 1386, 1390 (9th Cir. 1982); *see also Downey Sav. & Loan Assn v. Metz (In re Metz)*, 820 F.2d 1495, 1498 (9th Cir.1987) (applying totality of the circumstances test to determine good faith).

Section 1325's good faith requirement is frequently litigated, perhaps because of the term's vagueness. *See Nelson v. Easley (In re Easley)*, 72 B.R. 948, 950 (Bankr.M.D.Tenn.1987) (more than 300 reported "good faith" decisions, some with nearly identical facts producing inconsistent results). The presence of student loans in chapter 13 plans has added to the long list of good faith decisions. *Nelson*, 72 B.R. at 953 n. 4 ("[e]specially confusing are the student loan cases").

Objecting creditors contend the bankruptcy court erred in its good faith analysis when it refused to consider the low percentage repayment to objecting creditors and the fact that the debt is nondischargeable under chapter 7. Objecting creditors cite additional error due to the court's refusal to follow a Ninth Circuit Bankruptcy Appellate Panel (BAP) decision on this issue.

The bankruptcy court noted that it must make its good faith determination "in light of *all* militating factors." *Oregon State Scholarship Comm'n v. Selden (In re Selden)*, 116 B.R. 232, 234 (Bankr.D.Or.1990) (quoting *Goeb*, 675 F.2d at 1390) (emphasis in original). The court also noted that under *Goeb*, substantiality of the proposed repayment is a relevant factor. *Id.* However, the bankruptcy court held that 1984 amendments to the Bankruptcy Code eliminated the amount of the proposed repayment from its good faith determination. *Id.* at 234–35.

### A. 1984 Amendments

In 1984 Congress amended section 1325 to include subsection (b), incorporating additional confirmation requirements. The statute now reads, in pertinent part:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

. . . .

(3) the plan has been proposed in good faith and not by any means forbidden by law;

. . . .

(b)(1) If the trustee or holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

. . . .

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

11 U.S.C. § 1325.

Under the bankruptcy court's analysis, upon objection by the trustee or an unsecured creditor, it must examine whether the debtor has devoted all projected disposable income to the plan as required by section 1325(b)(1)(B). If the debtor has so dedicated her disposable income, the court proceeds to a good faith analysis, but the type of debt and percentage and length of repayment are not relevant to that inquiry.

The bankruptcy court's analysis is in accord with at least one commentator and one bankruptcy court. In *In re Red*, 60 B.R. 113, 116 (Bankr.E.D.Tenn.1986), the court held that where the requirements of section 1325(b) are met, the fact that the plan results in a low percentage repayment is not relevant in assessing the good faith of the chapter 13 plan. The court adopted a leading treatise's rationale that because subsection (b) specifically deals with ability to pay provisions, there is no longer any reason for the amount of a debtor's payments to be considered as part of the good faith standard. *Id.* (citing 5 L. King, Collier on Bankruptcy para. 1325.04[3] (15th ed. 1985)).

At least one bankruptcy court and one bankruptcy appellate panel have rejected this approach. In *In re Hale*, 65 B.R. 893, 895 (Bankr.S.D.Ga.1986), the court declined to follow *Red*. In *Red*, the plan was not

confirmable because the debtor also failed the disposable income test under subsection (b), so the court's interpretation of good faith factors was dictum. *Hale*, 65 B.R. at 895. Furthermore, *Hale* found that by passing section 1325(b)(1)

Congress established a minimum effort requirement for debtors. This did not dispose of the need for an analysis as to whether that minimum effort results in a meaningful repayment to creditors, an essential element of good faith under existing case law.

*Id.*

The Ninth Circuit BAP also rejected the contention that the amendment, due to its specificity, displaced the need to examine the debtor's prebankruptcy conduct in a good faith analysis. *Fidelity & Cas. Co. of New York v. Warren (In re Warren)*, 89 B.R. 87, 93 (9th Cir. BAP 1988). Instead, the court found that even when a debtor meets the "best efforts" test of subsection (b), the amount of the proposed repayment, the proposed length of the plan, and the nondischargeability of the debt under chapter 7, are all still relevant factors in determining good faith. *Id.* at 93–95. The BAP also found that the debtor's burden of proving good faith is "especially heavy" in a "superdischarge" situation.[1] *Id.* at 93.

### B. The Correct "Good Faith" Standard

Objecting creditors argue that the insignificant amount of the proposed repayment, combined with the fact that debtor's "bankruptcy serves absolutely no purpose except to discharge non-dischargeable [chapter 7] debt", indicate that debtor did not file the plan in good faith, even though the bankruptcy court found that debtor devoted her disposable income to the plan in accordance with section 1325(b)(1). *See Selden*, 116 B.R. at 231, 236–37.

However, objecting creditors fail to see that Congress placed the disposable income test in its own subsection and not in the subsection containing the good faith requirement. This fact, in addition to the

---

1. A repayment plan under chapter 13 allowing discharge of debt potentially nondischargeable under chapter 7 is known as a "superdischarge". *See, e.g., Warren*, 89 B.R. at 88.

specificity of subsection (b) compared with the more general language in subsection (a), indicates that Congress considered these analyses separate and distinct. I agree with the bankruptcy courts for the District of Oregon and the Eastern District of Tennessee, that once the court finds that debtor meets the requirements of section 1325(b), the fact that the plan results in a low percentage repayment is not relevant in assessing the good faith of the chapter 13 plan. The bankruptcy judge did not err as a matter of law in rejecting consideration of these factors in the good faith analysis.

### C. BAP decisions as binding authority

Objecting creditors argue that the Ninth Circuit BAP decision in *Warren* is binding on the bankruptcy court even though it originated in the Central District of California. They argue that the court was not free to ignore the "especially heavy" burden on debtor to prove good faith, or the substantiality of repayment and character of debt in its good faith analysis.

■ BAP decisions arising from another district in the circuit are not binding on this bankruptcy court. Appeals from bankruptcy court decisions go either to BAPs or district courts. Appeals from BAP or district court decisions go to the Ninth Circuit Court of Appeals. Thus, BAPs and district courts are equivalents in the bankruptcy appeal process.

Because a bankruptcy court is not bound by decisions from other districts, it should not be bound by BAP decisions originating in another district. *See, e.g., In re Junes,* 76 B.R. 795, 797 (Bankr.D.Or.1987), *aff'd on other grounds,* 99 B.R. 978 (9th Cir. BAP 1989); *see also Bank of Maui v. Estate Analysis, Inc.,* 904 F.2d 470, 472 (9th Cir.1990) (noting that several other courts have found BAP decisions not controlling on the circuit as a whole but refusing to reach the issue in the particular case); *but see In re Windmill Farms, Inc.,* 70 B.R. 618, 621 (9th Cir. BAP 1987) (suggesting that one reason for establishing the BAP was to provide a uniform and consistent body of bankruptcy law throughout the entire circuit and therefore, BAP decisions must be binding on each district in the Ninth Circuit), *rev'd on other grounds,* 841 F.2d 1467 (9th Cir.1988).

The court in *Warren* apparently imposed the especially heavy burden because debtors will use chapter 13 to evade debts not discharged under chapter 7. *Warren,* 89 B.R. at 94; *see also In re Wall,* 52 B.R. 613, 615–16 (Bankr.M.D.Fla.1985). However, Congress has allowed debts to be discharged in chapter 13 cases that would otherwise be nondischargeable. Section 1328(a) provides that upon completion of the plan, the court shall enter a discharge of all debts except for those provided under sections 1322(b)(5) and 523(a)(5). 11 U.S.C. § 1328(a). This section appears to have been intended to encourage the use of Chapter 13 by debtors. Requiring an especially heavy burden of proof penalizes debtors who are utilizing a statute passed for their benefit. *See In re Adamu,* 82 B.R. 128, 130 (Bankr.Or.1988), *aff'd,* No. 88–513 (D.Or. August 2, 1988 Opinion and Order).

The BAP's legitimate concerns regarding the possibility that chapter 13 debtors will evade debts not dischargeable in chapter 7 by proposing substantially low repayments of such debts under chapter 13, are properly addressed under the good faith analysis. There is no need to require an especially heavy burden of proof.

### II. *The Finding of Good Faith*

■ Objecting creditors argue that debtor proposed her plan in bad faith because she "recklessly incurred debt she could not pay", she failed to disclose receipt of child support payments in her original plan, and she made numerous clothing and electronic stereo equipment purchases prior to filing. Additionally, objecting creditors argue that the plan should not be confirmed because all of debtor's disposable income is not devoted to the plan.

The bankruptcy court applied the "totality of the circumstances" test to determine debtor's good faith. *Selden,* 116 B.R. at 234. I find that the bankruptcy court's finding of good faith is not clearly erroneous.

The fact that during law school, debtor hoped to become a deputy district attorney and incurred student loans without inquiring into such an attorney's salary, does not indicate she "recklessly incurred debt she could not pay." Debtor was eligible for the loans at the time of receipt and objecting creditors did not require debtor to estimate her future salary. The bankruptcy court found that the facts supported the debtor's testimony that she fully intended to repay the loans at the time she borrowed the money. *Id.* at 237 n. 6.

The bankruptcy court also found that the debtor's explanation for omitting the child support payment was credible and satisfactory. *Id.* at 236. The court noted that one father's residence is unknown and debtor has not heard from him in years. At last account the father was a chemically dependent alcoholic facing extradition to another state on felony charges. The debtor sought the assistance of the Support Enforcement Division of the State of Oregon to collect the obligation without success.

The debtor's omission of child support from Kim Walters, whose paternity has never been established and who voluntarily pays support, was included in an amended budget. Debtor believed that because the support was not taxable as income, it was not includable as income for chapter 13 purposes. The bankruptcy judge found debtor's explanation for the omission was credible. *Id.* This finding was not clearly erroneous.

The court also found that the debtor's prefiling purchases did not evidence bad faith because they were insignificant. *Id.* at 238. I agree. Finally, the court determined that debtor did devote all of her disposable income to the plan. *See Id.* at 231, 236–37. The only item the court found necessary to adjust was debtor's projected expense for heat. *Id.* at 236–37. The court adjusted the expense accordingly.

The bankruptcy court's findings regarding the debtor's failure to disclose receipt of child support payments in her original plan, her prefiling purchases, and her projections of disposable income, were not clearly erroneous. A reviewing court should not lightly disturb a factfinder's conclusion, especially when the factfinder is applying a totality of the circumstances test, described by one court as the "smell test." *Easley,* 72 B.R. at 955.

CONCLUSION

I affirm the bankruptcy court's judgment.