**In re Irene M. BROCK, Debtor.**

**Bankruptcy No. 84–04247–P13.**

United States Bankruptcy Court, S.D. California.

Feb. 28, 1985.

Craig E. Dwyer, San Diego, Cal., for debtor, Irene Brock.

Ronald P. Albert of Glenn, Wright, Jacobs, & Schell, San Diego, Cal., for the Bank of Smithtown.

Harry Heid, San Diego, Cal., Chapter 13 trustee.

### MEMORANDUM OPINION

ROSS M. PYLE, Bankruptcy Judge.

This Chapter 13 confirmation hearing came on regularly for hearing on January 30, 1985. The Court took the matter under submission to fully consider the evidence presented, as well as the briefing and arguments of counsel and the Trustee.

### FACTS

The debtor is employed as a legal secretary whose monthly net take-home pay is approximately $1,103.94. The Amended Plan proposed by the debtor provides payment of $125 each month for a 10 percent dividend to unsecured creditors. The Trustee estimates the length of the Plan to be approximately 60 months. The debtor budgets the following items:

| Income | | $1,103.94 |
|---|---|---|
| Rent | $460.00 | |
| Utilities | 50.00 | |
| Food | 200.00 | |
| Clothing | 20.00 | |
| Laundry and Cleaning | 25.00 | |
| Newspapers, Periodicals, etc. | 15.00 | |
| Medical, Dental, Drugs | 28.00 | |
| Insurance: Auto | 17.42 | |
| Transportation Costs | 115.00 | |
| Recreation | 6.00 | |
| Miscellaneous | 42.50 | |
| EXPENSE TOTAL | | (978.92) |
| SURPLUS | | $ 125.02 |

The debtor has only one creditor which is the Bank of Smithtown (Bank) whose claim is allegedly $68,823.53. The Bank opposes confirmation of the Plan and requests dismissal of the Chapter 13 proceeding with prejudice.

## BACKGROUND

The debtor previously resided in Smithtown, New York, where she worked as a legal secretary. She was the author of an embezzlement scheme under which she personally endorsed checks intended for her law firm's escrow account and deposited them into her own personal account. Once the law firm had discovered this conduct, they sued the Bank to recover the embezzled funds. The Bank cross-claimed on a third party action basis against debtor in the event the law firm was successful in the main suit. Debtor, although represented by counsel, defaulted in the third-party action.

The law firm eventually prevailed, and the Bank took a corresponding judgment against debtor. Debtor left New York and moved to California, and the Bank eventually proved up its default judgment in California as a sister state judgment in 1981 for $55,288.92. Before the Bank could successfully execute on its judgment, the debtor filed a Chapter 7 petition on August 26, 1981.

On July 24, 1984, after trial on the merits, Judge Malugen of this Court ruled that the obligation owed to the Bank was excepted from discharge in Chapter 7 by 11 U.S.C. § 523(a)(4). The Court concluded that the original judgment resulted from debtor's embezzlement scheme and therefore was not subject to the discharge of Section 727(b).

Once again, before the Bank could successfully execute on this new judgment, the debtor on October 1, 1984, filed her Chapter 13 petition.

Initially, debtor proposed a Plan to repay her unsecured creditor one percent at $20 a month, which Plan was estimated to last 36 months. After an initial appearance before the Court, debtor amended the Plan to the one now presented, promising a ten percent payment to her unsecured creditor over an approximate 60-month period.

Debtor is a woman in apparent good health approaching 65 years of age with no other prospects than her employment for present income. Within a few years, she expects to be living solely on social security benefits. Debtor's assets are minimal, consisting of household goods, furniture, personal effects, and a 1969 Buick automobile.

## DISCUSSION

Both sides concentrate upon the good faith requirement of 11 U.S.C. § 1325(a)(3) and its application or non-application to the debtor's Plan. The Bank argues that this is the clearest case of bad faith where there is but a single creditor, a minimal repayment plan, a continued course of conduct of the debtor in an effort to avoid the consequences of her embezzlement scheme, and a manipulation of the bankruptcy system in the serial filing of the Chapter 13 after her lack of success in the fully litigated dischargeability adversary proceeding in the former Chapter 7. Debtor, on the other hand, argues that there is no requirement in Chapter 13 that a substantial repayment of obligations must be made, that without the protection of Chapter 13 the Bank would continually institute collection proceedings which might result in the loss of debtor's employment as well as leaving her with insufficient funds for necessities of life, and that other minimal payment plans including zero percentage plans have been approved by this Court.

This case is, perhaps, one of the clearest presentations of the differences between Chapter 7 and the super discharge of Chapter 13. Those differences have spawned a legion of cases concerning the pivotal point of "good faith."

■ It is clear to this Court that good faith is a criterion under Section 1325(a) in addition to the other requirements contained in that subsection. *See In re Rimgale,* 669 F.2d 426 (7th Cir.1982).

■ *In re Goeb,* 675 F.2d 1386, 1390 (9th Cir.1982) stated that "... bankruptcy courts should determine a debtor's good faith on a case-by-case basis, taking into account the particular features of each Chapter 13 plan." The Court points out that a bankruptcy court as a court of equity is vested with a great deal of discretion in its control over the process of formulation and approval of reorganization plans.

Although the *Goeb* decision does not specifically define good faith nor does it provide a check list of conditions, it does give some guidance. At page 1390 of its decision, the Court said:

> [W]e believe that the proper inquiry is whether the [debtors] acted equitably in proposing their Chapter 13 plan. A bankruptcy court must inquire whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner. Though it may consider the substantiality of the proposed repayment, the Court must make its good-faith determination in the light of *all* militating factors. (Footnote omitted.)

The Eighth Circuit in its decision, *In re Estus,* 695 F.2d 311 (8th Cir.1982), gave a non-exclusive list of factors which are helpful. Those factors are:

(1) The amount of the proposed payments and the amounts of the debtor's surplus;

(2) The debtor's employment history, ability to earn and likelihood of future increases in income;

(3) The probable or expected duration of the plan;

(4) The accuracy of the plan's statements of the debts, expenses and percentage of repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) The extent of preferential treatment between classes of creditors;

(6) The extent to which secured claims are modified;

(7) The type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) The existence of special circumstances such as inordinate medical expenses;

(9) The frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) The motivation and sincerity of the debtor in seeking Chapter 13 relief; and

(11) The burden which the plan's administration would place upon the trustee.

*Id.* at 317.

■ Consideration of these guidelines and all of the militating circumstances of the case at bar lead the Court to the conclusion that the debtor has not met the good-faith requirements of 11 U.S.C. § 1325(a)(3). Although the debtor's budget illustrates that she is devoting a substantial portion of her available income to this Plan and the Schedules do not conceal the earlier filing of the Chapter 7 petition nor the character of the single debt that she owes, the fact remains that the Plan itself is an effort to discharge a debt, which was nondischargeable in Chapter 7, by paying only a small amount of the obligation. The motivation and sincerity of the debtor in seeking the Chapter 13 relief is not to repay the creditor, but to escape the consequences of the judgment. One of the major policies of the bankruptcy system is to

**170**

"... relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh." *Local Loan Company v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1933). That laudable purpose certainly would not be served in this case since the debtor does not qualify.

The filing of the Chapter 7 petition and the immediate follow-up filing of the Chapter 13 petition once the debtor had lost on the merits of dischargeability of this creditor's obligation is an unfair manipulation of the Bankruptcy Code.

The debtor's concern that she will be left with insufficient funds for the necessities of life should the creditor pursue wage garnishments against her ignores the provisions of both California law and federal law. On the federal side, 15 U.S.C. § 1673(a), allows garnishment of only 25 percent of a debtor's net income which is also the maximum amount allowed under California law. California, however, provides a further limitation upon garnishment, allowing a debtor to exempt *all* income which is reasonably necessary for support. See California Code of Civil Procedure § 706.051. In addition to these considerations, it is likely once the debtor is on Social Security she will be completely judgment proof.

It is not within the spirit and purpose of the Bankruptcy Code considering all of the debtor's circumstances to allow relief under Chapter 13 in this case.

### CONCLUSION

The debtor's Chapter 13 Plan does not meet the good faith requirements of § 1325(a)(3) in that it proposes a ten percent plan to repay a single creditor whose judgment is based upon a claim arising out of the debtor's embezzlement of funds, which judgment has been tested in Chapter 7 and found there to be non-dischargeable. Let an Order be entered denying confirmation of debtor's Plan with prejudice.