**In re Dennis Kent CASTELLO, Debtor.**

**Bankruptcy No. 388–04809–H13.**

United States Bankruptcy Court, D. Oregon.

April 7, 1989.

Todd Trierweiler, Portland, Or., for debtor.

B. Gil Sharp, Hood River, Or., for creditor.

Robert W. Myers, Portland, Or., trustee in Bankruptcy.

## OPINION

HENRY L. HESS, Jr., Chief Judge.

The principal issue in this case was whether the plan had been filed in good faith and whether it was proper for the court to have entered the order of confirmation. The creditor appeared by his attorney, B. Gil Sharp, of Hood River, Oregon, and the debtor appeared by his attorney, Todd Trierweiler, of Portland, Oregon.

The debtor's plan dated November 9, 1988, provides that the debtor will pay to the trustee $125 per month. From such payments, the trustee will pay the expenses of administration, the debts entitled to priority and 100% of the debtor's unsecured restitution debt.[1] No provision is made for payment upon general unsecured claims not entitled to priority. The chapter 13 Statement of the debtor lists only the following claims: 3 claims for student loans totaling $2,271; an unliquidated and disputed personal injury claim of Terry Serdy; a claim owing to Multnomah Circuit Court Restitution Department for approximately $6,000; and a debt for arbitration fees of $250. It is apparent that the debtor has no assets other than exempt assets and there would be no distribution to creditors

---

1. The propriety of the separate classification of the restitution obligation was not challenged, and the court therefore will not address the issue.

if the estate were liquidated in a Chapter 7 proceeding.

Before the petition was filed, creditor Serdy had commenced a state court action against the debtor. In the civil complaint Serdy seeks special, general and punitive damages totalling $67,000. Serdy has filed a proof of claim herein in the amount of $117,000. The court has not been informed of the reason for the increase of $50,000 nor how much of the $67,000 (or the $117,-000) represents a claim for non-compensatory punitive damages.

As shown by the proof of claim filed by the Circuit Court Accounts Department, the debtor was placed on probation for five years, sentenced to jail for six months and ordered to pay restitution of $55 to Serdy and $5,712.63 to Crime Victims Compensation. The Department filed a proof claim showing a balance owing of $6,263.83. The Department did not appear at the confirmation hearing and did not file objections to confirmation. It will take 53 months at $125 per month to pay the restitution debt and the trustee's charges.

The debtor's budget shows monthly income of $948, monthly expenses of $823, and monthly net disposable earnings of $125. The creditor agrees that the net monthly disposable income does not exceed $125 at this time. It is agreed by the parties that the claim of Serdy, having arisen out of an assault, would not be dischargeable in a Chapter 7 case. It is also agreed that the debt for restitution, which arises out of a conviction of the crime of assault, would not be dischargeable in a Chapter 7 case. The parties do not agree whether or not the student loan obligations would be dischargeable. The debtor suggests that, given the existence of the non-dischargeable claim of Serdy and the existence of the non-dischargeable claim of restitution, the student loan debts would probably be dischargeable as constituting an undue burden.

The debtor agreed that the plan should be amended by interlineation to provide that the monthly payments of $125 be made for a period of not less than 36 months and that the dividend upon general unsecured claims should be changed from "0%" to "approximately zero percent". The debtor has agreed to file quarterly reports with the trustee showing current income and expenses so that, should the debtor's net disposable income increase during the term of the plan, the creditors would have the information necessary to file an amended plan calling for monthly payments larger than $125.

The creditor points to the following which he feels indicate bad faith: (1) the plan does not contemplate any payment upon general unsecured claims other than 100% upon the restitution obligation; (2) the debtor's obligations probably would not be discharged in a Chapter 7 case; and (3) this case is a "Chapter 7 case in disguise". The court asked the creditor if there were any other matters which the court should consider in determining whether the plan is in good faith. The creditor did not suggest any other facts to be considered.

The creditor relies strongly upon the case of *In re Warren*, 89 B.R. 87 (9th Cir. BAP 1988). In that case the BAP discussed the procedure to be followed when objections to confirmation are filed as well as the substantive tests to be followed in determining whether a plan is filed in good faith.

On the procedural question, the *Warren* court states that when objections to confirmation are filed the court "may" find that the plan was filed in good faith without receiving evidence, or the court "may" also, even without objection, require that evidence as to good faith be presented. The court further states: "Where there is an objection, more than bare presentation of the plan and provisions for payment thereunder is requisite." *Warren, supra* at page 91.

█ Since one of the major purposes behind the enactment of the Bankruptcy Code of 1978 was to remove the bankruptcy judge from the role of an administrator and limit the duties to deciding contested and

adversary matters,[2] I assume the above-quoted language does not imply that the bankruptcy judge has a duty to conduct some independent investigation or examination. Instead, it should be sufficient for the judge to decide contested and adversary matters, such as whether a plan should be confirmed, upon the basis of the evidence presented by the litigants. Thus, in this case, where the attorney for the debtors and the attorney for the creditors agreed upon the facts which the court should consider in determining whether the plan was filed in good faith, it would appear appropriate to make this determination without requiring the parties to present additional evidence. It would seem that the presentation of evidence should be required only if there are factual disputes. The court will therefore decide the question at hand based upon the above statement of facts about which there is no controversy.

On the substantive issue of whether a plan is filed in good faith, *Warren* acknowledges that inclusion of a debt which would not be dischargeable in a Chapter 7 case is not *per se* bad faith. It also acknowledges that a plan which provides for no dividend or only a minimal dividend upon general unsecured claims may or may not equate with bad faith. *Warren* states that the good faith requirement under 11 U.S.C. § 1325(a)(3) is separate and distinct from the best effort requirement of 11 U.S.C. § 1325(b)(1)(B).

In the *Warren* opinion four cases decided by the Ninth Circuit Court of Appeals were cited: *In re Chinichian*, 784 F.2d 1440 (9th Cir.1986); *In re Goeb*, 675 F.2d 1386 (9th Cir.1982); *In re Gregory*, 705 F.2d 1118 (9th Cir.1983); and *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 707 (9th Cir.1986).

The *Sierra* case is cited for the proposition that when statutory construction involves an issue of law, on appeal, the *de novo* standard applies.

*Chinichian* holds that the debtor has the burden of showing good faith and that the court should "examine the intentions of the debtor and the legal effect of the confirmation of a Chapter 13 Plan in the light of spirit and purpose of Chapter 13." The court appears to be saying that a plan is in good faith if, from the evidence, it appears more likely than not that the plan is in good faith. *Chinichian* does not discuss what the "spirit and purpose of Chapter 13" may be. Presumably, utilizing a Chapter 13 plan to accomplish ends specifically

2. In an earlier day, bankruptcy referees were not paid a salary. Their compensation came from a percentage charge against the estate. Thus, when a question arose as to whether property was property of the estate, a litigant could reasonably suspect that the basis of the referee's compensation might have something to do with the decision to be reached. It was commonplace for the referee to advise the trustee whether or not to pursue an action. When the action came on for trial, the party sued could reasonably have some question regarding the impartiality of the referee.

One of the major purposes of the Bankruptcy Code of 1978 was to relieve the bankruptcy judge (who prior to 1973 was known as the referee in bankruptcy) from administrative duties and make him or her a judge whose function was to decide controversies between litigants. *In re Freedlander Incorporated*, 95 B.R. 390, 18 BCD 1214 (Bankr.E.D.Va.1989). No longer was the bankruptcy judge a supervisor of the trustee with an interest in or duty to maximize the property of the estate or to actively pursue the interests of either the debtor, a creditor or any other litigant who might appear before him or her. The bankruptcy judge was to be relieved of any functions which might impair his or her impartiality or appearance of impartiality. The bankruptcy judge now was to decide matters presented solely upon the evidence presented by the litigants. It would be highly improper for the bankruptcy judge to initiate, on his own motion, an investigation or require presentation of evidence that neither party to the dispute had offered. This would be even more objectionable should the judge feel he had some duty in general to protect the interest of a particular class of participants in a bankruptcy case.

If, as in the present case, the parties submit the question of good faith upon oral stipulations of counsel, it is entirely appropriate that the matter be decided on the agreed facts. It would be improper for the bankruptcy judge to insist that an evidentiary hearing be conducted when neither party has requested one. For the court to do so could lead to a suspicion that the judge had a general bias for or against debtors or some class of creditors. This court thereby concludes that *Warren* is not saying that the bankruptcy judge should go beyond the evidence presented by the parties and insist upon a further evidentiary hearing on his or her own motion, but merely that the bankruptcy judge should consider the evidence before him or her.

provided for by statute would not violate the spirit and purpose. Thus, intending to seek a discharge under § 1328(a) of a debt which would not be dischargeable in a Chapter 7 case should not be evidence of bad faith.

*Gregory* was concerned with the question of whether an unsecured claim was "provided for" by a plan which called for no payment upon unsecured claims. The court stated it was not called upon to determine the permissibility of a zero-payment plan. That case, in dicta, suggests a plan is not in good faith "where all the facts lead inexorably to the conclusion that the petition has been filed to avoid, at minimal cost a[n otherwise] nondischargeable debt". Such dicta is particularly unreliable because the case was decided prior to the amendment which added subsection (b) to section 1325.

> "[T]he 1984 amendments to the Code finally resolve the issue of whether any particular amount must be paid to unsecured creditors above that required by the best interest test [§ 1325(a)(4)]. Since Congress has now dealt with the issue quite specifically in the ability-to-pay provisions, there is no longer any reason for the amount of a debtor's payments to be considered even a part of the good faith standard." 5 L. King, *Collier on Bankruptcy*, ¶ 1325.04[3], (15th ed. 1987).

The above amendment shifts the focus from the amount to be received by unsecured creditors to what effort the debtor will be making. In the case before this court the debtor is obligating all of his present disposable earnings for a period of 53 months. Therefore, the percentage paid to unsecured creditors should be given virtually no weight in determining good faith.

*In re Goeb*, the most definitive statement by the Ninth Circuit Court of Appeals upon the question of what constitutes good faith, supports that conclusion. In that case the debtors owed $64,967 secured by a trust deed obligation on their home, priority unsecured claims totalling $11,851, (consisting mostly of taxes left unpaid from an unsuccessful and now defunct business), and nonpriority unsecured claims of $20,-597. Under the plan the debtors would pay the secured and priority claims in full but unsecured claims only one cent on the dollar. The bankruptcy court found that the debtors could not afford larger payments to the unsecured creditors, that such creditors would not receive a larger amount under Chapter 7, and that the primary purpose of the plan was to restructure their tax obligations over the five year life of the plan. The bankruptcy court refused to confirm solely on the basis that since the plan did not provide for substantial repayment of the unsecured claims, the plan was not proposed in good faith. The Ninth Circuit Court of Appeals reversed the trial court and remanded the case for further proceedings.

*Goeb* instructs us that, while Congress did not specifically define "good faith" and that the term by itself is sufficiently ambiguous to tolerate many interpretations, it is improper to adopt an inflexible requirement like the one applied by the bankruptcy court. The court also cautions against straining the language of the statute.

> Congress did explicity set a minimum repayment level in § 1325, but not one requiring substantial repayment. Subsection (a)(4) requires that the amount to be paid on each unsecured claim cannot be 'less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7.' The presence of an explicitly statutory standard (which the Goebs met) strongly suggests that Congress did not intend to substitute a more rigorous standard when it imposed a general good faith requirement.

> Despite all this, courts have vigorously debated whether 'good faith' should be construed to require the substantial repayment of unsecured creditors in order to maintain the integrity of Chapter 13. Some, like the court below, impose the requirement because '[o]therwise, a Chapter 13 case becomes nothing more than a Chapter 7 case without its attendant provisions.' *In re Goeb*, 4 B.R. [735] at 736 [Bkrtcy.Cal.1980]. They fear a windfall to the debtor at the expense of his unsecured creditors. Other courts insist that an implied substantial repayment requirement would undermine Con-

gress' effort to give as many debtors as possible a fresh start through Chapter 13's liberal discharge provisions, see *In re Barnes*, 13 B.R. 997, 999–1000 (D.D.C. 1981), and to make explicit the prerequisites for proceeding under Chapter 13, see *In re Thebeau*, 3 B.R. 537, 539 (Bkrtcy.E.D.Ark.1980). Although both views have some merit neither is so persuasive as to cause us to strain the language of the statute. *In re Goeb, supra* at 1388.

The court then went on to say:

In conclusion, we decline to impose a substantial-repayment requirement because (1) it is contrary to the language of the statute, (2) whether it would best further the purposes of the Bankruptcy Code is uncertain, and (3) Congress is aware of the perceived deficiency in § 1325(a). Rather than set a rigid standard under the guise of interpreting "good faith," we deem it advisable to apply the law as written and wait for Congress to create, if it chooses, further conditions for the confirmation of Chapter 13 plans. *Id.* at 1389.

■ Following the same line of reasoning, it would not appear appropriate for a bankruptcy court under the guise of lack of "good faith" to refuse confirmation for seeking the relief provided for in § 1328(a) (i.e., the discharge of a debt which would not be dischargeable in Chapter 7). To say that a debtor's attempt to utilize this section is evidence of bad faith would be like saying a taxpayer acts in bad faith by taking a lawful deduction upon his income tax return for the sole purpose of reducing his tax liability.

There are factors present in the instant case which, as noted by the *Goeb* court, indicate good faith:

In this case, some facts strongly suggest that the Goebs proposed their plan in good faith. They did not elect Chapter 13 over Chapter 7 to cheat their creditors: their plan would pay secured and priority creditors in full, which might not have occurred under Chapter 7; and apparently the unsecured creditors would

have received nothing under Chapter 7. Moreover, the plan does not leave the Goebs any surplus.

In finding bad faith, the bankruptcy court relied exclusively on the facts that (1) the Goebs elected to proceed under Chapter 13 to take advantage of an incidental feature of that chapter (deferring payment of back taxes), and (2) they did not intend to substantially repay unsecured creditors. *In re Goeb*, 4 B.R. at 736–37. Although these two considerations are relevant,[3] they are not determinative. Unless the court can muster other evidence of bad faith on remand, it must confirm the Goeb's proposed plan. *Id.* at 1391.

Here, as in *Goeb*, the creditor must muster some other evidence of bad faith. Considering the facts in the present case, and after consideration of the tests which *Goeb* indicates may be relevant in determining good faith, the court finds that the plan has been proposed in good faith and that the objections to confirmation should be overruled.

---

**3.** As discussed above, the 1984 amendments to § 1325(b) have since rendered the amount paid to unsecured creditors irrelevant in determining good faith.