**In re Snellen M. JOHNSON and Suzanne Johnson, Debtors.**

**Bankruptcy No. B–95–2029–PHX–CGC.**

United States Bankruptcy Court,
D. Arizona.

Oct. 5, 1995.

**180**

Bryan A. Albue, Fennemore Craig, P.C., Phoenix, Arizona.

Shelton L. Freeman and Denise L. Jackson, Beus, Gilbert & Morrill, Phoenix, Arizona.

Ralph McDonald, Trustee, Phoenix, Arizona.

### ORDER RE MOTION TO DISMISS

CHARLES G. CASE, II, Bankruptcy Judge.

### I.  INTRODUCTION.

Before the Court is a Motion to Dismiss filed by creditor Robert C. Russoli ("Russoli"). Russoli claims that the Debtors, Snellen M. Johnson and Suzanne Johnson ("Debtors"), do not meet the eligibility standards to file Chapter 13, as set forth in Section 109(e), because their unsecured debts exceed the statutory maximum of $250,000.[1] Russoli argues that at least two unsecured claims, his own and that of Fritz Richard and Edwin J. MacDonald ("MacDonald"), each, independently, put Debtors over the $250,000 maximum. Debtors contend that (i) Russoli's claim is disputed and unliquidated and therefore cannot be counted to determine whether Debtors' unsecured debts exceed $250,000; (ii) MacDonald's claim no longer exists because it has been settled; and (iii) Debtors meet the eligibility requirements of Section 109(e).

Finally, Russoli claims that Debtors' petition is filed in bad faith because it is designed to wrongly allow the Debtors a superdischarge of their otherwise non-dischargeable obligations to Russoli. Debtors contend that their petition was filed in good faith.

### II.  FACTS.

#### A.  The Russoli claims.

In 1993, Russoli filed suit against Debtors in state court, alleging Debtors defrauded Russoli of approximately $190,000, and further alleging violations of the securities laws and various RICO claims (the "Russoli claims"). Russoli claims that he was fraudulently induced to loan to Debtors $190,000 in cash for investment in an art company run by Debtors.[2] The state court lawsuit seeks rescissory damages in the amount of $190,000, plus interest and attorneys' fees, plus treble damages and punitive damages.

#### B.  The MacDonald claim.

One of the claims listed by Debtors as disputed is the MacDonald claim. MacDonald allegedly made Debtors a series of loans, on which Debtors defaulted. Subsequently, MacDonald and Debtors allegedly entered into a settlement agreement pursuant to which Debtors executed a $250,000 note in favor of MacDonald. A copy of the note is attached to the Motion to Dismiss as Exhibit A. Debtors defaulted on this note, and MacDonald and Debtors entered into a second settlement agreement in November, 1994, pursuant to which Debtors signed a consent judgment, allowing judgment to be entered against Debtors and their business entity for all amounts due under the $250,000 note. Copies of this settlement agreement and consent to judgment were also attached to the Motion to Dismiss.

---

1.  Unless otherwise provided herein, references to Sections are to sections of 11 U.S.C. § 101, et seq.

2.  The details surrounding the cash investment and the nature of the company are not relevant to this Order.

Pursuant to the terms of the note, the balance today is alleged to be approximately $465,000, including all default interest. Debtors list the MacDonald claim at $475,-000, but list it as contingent. At their 341 hearing, Debtors acknowledged the debt to MacDonald and the consent judgment, but stated that the liability was contingent. In their Response to the Motion to Dismiss, Debtors argue that the MacDonald claim was released and that MacDonald agreed to pursue only Debtors' business entities, and accordingly Debtors argue that MacDonald is not even a creditor. Debtors further state that the MacDonald claim was listed in the schedules only as a precautionary measure.

### C. The Bisgrove claim.

Creditor Gerald Bisgrove filed a proof of claim on June 26, 1995, alleging an unsecured claim of $79,789, as evidenced by an attached state court Judgment, dated October 14, 1993. This claim is listed by Debtors as unliquidated.

### D. The bankruptcy petition and the plan.

Debtors filed this Chapter 13 petition on March 13, 1995, the day prior to the continued state court summary judgment hearing on the Russoli claims.

Debtors list six claims totalling $1,660.82 as fixed, liquidated and undisputed. All remaining claims, totalling $1,042,764.75, are listed as contingent or unliquidated, or both. This figure does not include the Russoli claims, which are listed as unknown.

Debtors' plan is a thirty-six month plan with monthly payments of $550.00.

### III. DISCUSSION.

### A. The debt limits of Section 109.

Section 109(e) provides:

(e) Only an individual with regular income *that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $250,000* and noncontingent, liquidated, secured debts of less than $750,000, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $250,000 and non-contingent, liquidated, secured debts of less than $750,000 may be a debtor under chapter 13 of this title.

(emphasis added). Thus the question in this case is whether the Debtors owed on the date of the filing of their petition, noncontingent, liquidated, unsecured debts of less than $250,000. The Bankruptcy Appellate Panel for the Ninth Circuit has held that the question of whether a debt is contingent or liquidated for Chapter 13 purposes is a question of law, but the amount of the debt is a question of fact. *In re Nicholes*, 184 B.R. 82 (9th Cir. BAP 1995).

The BAP has also explained:

A debt is noncontingent if all events giving rise to liability occurred prior to the filing of the bankruptcy petition.... The fact that [a claim is] not reduced to judgment does not render [it] contingent.... [W]hether a debt is liquidated or not for purposes of 11 U.S.C. § 109(e) does not depend strictly on whether the claim sounds in tort or in contract, but whether it is capable of ready computation. For the same reason, whether a debt is liquidated does not depend on whether it is disputed. Thus, a disputed debt which is capable of ready determination is liquidated.... [T]he definition of 'ready determination' turns on the distinction between a simple hearing to determine the amount of a certain debt, and an extensive and contested evidentiary hearing in which substantial evidence may be necessary to establish amounts or liability.

*In re Loya*, 123 B.R. 338, 339–340 (9th Cir. BAP 1991) (citations omitted); *see also, In re Sylvester*, 19 B.R. 671 (9th Cir. BAP 1982) (claim is liquidated on the date of filing because claim was readily ascertainable and the fact that it was disputed is irrelevant for purposes of determining Chapter 13 eligibility). Under this standard, neither the Russoli claims or the MacDonald claim appear to be contingent. All the acts that give rise to the claims have already occurred. Whether the claims are liquidated is somewhat more difficult.

As noted above, this Chapter 13 case was filed on the day before continued summary judgment proceedings on the Russoli claims. The summary judgment proceedings could have, and could still, determine whether the Russoli claims were liquidated *on the filing date*—i.e. whether the Russoli claims are capable of ready computation. The fact that those proceedings were not finished on the bankruptcy filing date does not mean that the Russoli claims will forever be deleted from the Section 109(e) calculus. Rather, the state court can still decide today whether the debt was liquidated, and in what amount, on the filing date. Debtors' suggestion to the contrary is counter-intuitive and not supported by the law. Therefore, the stay will be lifted to allow that determination to be made.

The MacDonald claim is supported by a promissory note with a face amount of $250,-000. Accordingly, it appears on its face to be capable of ready computation. Nonetheless, the Debtors argue that it is contingent because the debt has been assumed by a non-debtor party. While the state court is deciding the Russoli claim, this Court will tackle the MacDonald claim.[3]

**B. The Debtors' good faith.**

At the motion to dismiss stage, the creditor has the burden of proving a lack of good faith on the part of the debtor; however at the plan confirmation stage, the debtor has the burden of demonstrating good faith. *See, In re Love,* 957 F.2d 1350 (7th Cir.1992); *In re Caldwell,* 895 F.2d 1123 (6th Cir.1990).

In a Chapter 7, a debt arising from a debtor's wilful and malicious injury of another person is normally excepted from discharge, while in a Chapter 13, such debts are dischargeable. In this case, although it is not yet established whether the Russoli claims would be nondischargeable in a Chapter 7, the Russolis have clearly alleged fraud on the part of the Debtors in the state court proceedings and in papers filed with this Court. Because of the small return to the unsecured creditors of the Debtors, this case could well turn out to be a veiled Chapter 7 case.

In *In re Caldwell,* the Sixth Circuit explained as follows:

> The good faith, or lack of it, with which the [Chapter 13] plan is proposed, distinguishes a sincere effort at repayment from a false one. Courts should not approve Chapter 13 plans which are nothing more that 'veiled' Chapter 7 plans. A Chapter 13 plan which proposes to repay only a small portion of a debt which could not be discharged under Chapter 7 deserves 'particular scrutiny.' ... [A]n attempt to discharge a debt under Chapter 13 which is not dischargeable under Chapter 7 is not conclusive evidence that the Chapter 13 plan was not made in good faith.... It is not conclusively bad faith for a debtor to seek to discharge a debt incurred through his own criminal or tortious conduct, but that factor may be considered.

Id. at 1126–27, citing *In re Warren,* 89 B.R. 87, 95 (9th Cir. BAP 1988) (other citations omitted). In *Warren,* the Ninth Circuit BAP reversed and remanded a bankruptcy courts's Chapter 13 confirmation order, finding that the bankruptcy court failed to adequately consider the totality of circumstances surrounding the plan. *Id.* The debtor in *Warren* owed his former employer for pre-petition embezzlement. In considering the debtor's good faith, the BAP explained that the debtor's burden of establishing good faith is especially heavy where a superdischarge is sought in Chapter 13. *Id.* at 93. Although a nondischargeable debt does not per se indicate bad faith, the BAP cautions:

> [C]ourts should not grant, without due consideration, a discharge under Chapter 13 which might not be available under Chapter 7.... [A]lthough the use of Chapter to obtain the discharge of debts nondischargeable under Chapter 7 by itself is not sufficient to prove bad faith, it is a factor to be considered with others.... The super discharge of Chapter 13 was provided by Congress as an incentive for the debtor to commit to a repayment plan under

---

**3.** Since the claim by Gerald Bisgrove *may* be relevant to this inquiry, the Court will consider it at the same time.

Chapter 13, as an alternative to providing creditors nothing under Chapter 7. Given a proper case, the court need not, and should not, neutralize that incentive by confirming Chapter 13 plans that are in essence veiled Chapter 7 cases.

*Id.* at 93–95. Therefore, the plan in this case deserves particular scrutiny.

Several Courts have found good faith on the part of Chapter 13 debtors attempting to discharge claims arising from intentional assault. *See, e.g., In re Easley,* 72 B.R. 948 (Bankr.M.D.Tenn.1987); *In re Manes,* 67 B.R. 13 (Bankr.E.D.Ark.1986). On the other hand, where wilful and malicious injury is combined with an absence of legitimate other creditors, a plan that offers minimal repayment, and a filing timed just prior to a crucial proceeding in another court, bankruptcy courts have found bad faith on the part of debtors. *See, e.g., In re Cregut,* 69 B.R. 21 (Bankr.D.Ariz.1986) (J. Mooreman).

The Seventh Circuit has also examined the issue of pre-petition tortious conduct in the context of a Chapter 13 debtor's good faith. *In re Love,* 957 F.2d 1350 (7th Cir.1992). In *Love,* the debtor exhibited a pattern prepetition of refusing to pay taxes and falsifying W–4 forms. The Seventh Circuit explained that a good faith finding requires an intensive factual inquiry, and there is *no presumption* of bad faith where a debtor has engaged in egregious prepetition conduct. *Id.* at 1355. Because dismissal is a harsh remedy, the Seventh Circuit concluded that "the bankruptcy court should be more reluctant to dismiss a petition under Section 1307(c) for lack of good faith than to reject a plan for lack of good faith under Section 1325(a)." *Id.*

Concluding that the bankruptcy judge had conducted an evidentiary hearing and carefully weighed the evidence before dismissing the Chapter 13 case for bad faith, the Seventh Circuit affirmed the dismissal in *Love.* *Id.*

Several courts have adopted lists of factors to consider in evaluating a Chapter 13 debtor's good faith, whether in the context of a dismissal motion or plan confirmation. Factors include:

1. the nature of the debt, including whether the debt would be nondischargeable in a Chapter 7;

2. the timing of the petition;

3. how the debt arose;

4. the debtor's motive in filing the petition;

5. how the debtor's actions affected creditors;

6. the debtors' treatment of creditors both before and after the petition was filed;

7. whether the debtor has been forthcoming with the bankruptcy court and the creditors;

8. the duration of the plan;

9. the debtor's employment history, ability to earn and likelihood of future increase in income;

10. the extent to which secured claims are modified; and

11. whether the debtor is attempting to abuse the spirit of the Bankruptcy Code.

*See Warren, supra,* 89 B.R. 87; *Love, supra,* 957 F.2d 1350; *Caldwell, supra,* 895 F.2d 1123.

The Court finds that the issue of good faith should be deferred until the hearing on plan confirmation. At that time, all of the enumerated factors will be carefully weighed by the Court.

## IV. CONCLUSION.

The Court has considered all the papers filed by the parties and the oral argument of counsel.

Therefore, **IT IS ORDERED** as follows:

1. The automatic stay is lifted to allow the Russolis to pursue their pending motions for summary judgment in the state court proceedings against Debtors.

2. The confirmation hearing in this case shall be consolidated with an evidentiary hearing regarding Debtors' good faith in filing their Chapter 13 petition. This evidentiary hearing shall be set by the Court after the state court has ruled on the Russoli summary judgment papers, or sooner as the Court determines.

3. An evidentiary hearing shall be conducted **at 1:30 p.m. on the 7th day of November, 1995,** Courtroom 6, 10th floor, 2929 N. Central Ave., Phoenix, Arizona 85012, to determine whether the MacDonald claim or the Bisgrove claim, or both, are contingent and/or unliquidated. The Debtors shall appear at this hearing. On this same date and time a status hearing will be held to advise the Court of the status of the state court proceedings regarding the Russoli claims.