**In re David L. JACOBS, d/b/a Jacobs Used Cars, SSN 444–38–2282 Anna Jacobs SSN 447–40–5447, Debtors.**

**Bankruptcy No. 88–70349.**

United States Bankruptcy Court, E.D. Oklahoma.

Oct. 4, 1988.

As Corrected July 11, 1989.

Jimmy Veith, Ardmore, Okl., for debtors.

Stan McKay, Marietta, Okl., for Bank of Love County.

## ORDER

JAMES E. RYAN, Bankruptcy Judge.

On August 24, 1988, this Court conducted a hearing on the Confirmation of Debtors' Chapter 13 Plan with an accompanying Objection by the Bank of Love County (Bank).

Appearances were entered at the hearing by Jimmy Veith on behalf of the Debtors and Stan McKay for Bank.

At the conclusion of the taking of evidence, the parties were afforded the opportunity to file Briefs in support of their respective positions. All such Briefs were received by September 23, 1988.

Upon review of the evidence, file and the Briefs, this Court FINDS:

## FINDINGS OF FACT

1. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b).

2. The Debtors were pre-Petition owners and operators of a wholesale used car sales business in Marietta, Oklahoma. Debtors financed their business by obtaining revolving credit with Bank. This loan was secured by the automobiles and the proceeds of sale, as well as a Second Mortgage on the Debtors' home. The Debtors began experiencing financial difficulties in November, 1985, culminating in the filing of a Chapter 7 Bankruptcy Petition (Case No. 87–00057) on January 20, 1987.

3. Debtors listed as secured debt $89,-836.44 with the security being the Second Mortgage on the Debtors' home, valued at $45,000. A First Mortgage of $16,000 also was secured by this home's value. No mention of the disposition of the vehicles was offered.

4. Through an Adversary Proceeding filed March 25, 1987, it was determined by Agreed Order filed November 10, 1987 that Debtors sold the collateral (i.e., automobiles) and converted the proceeds without Bank's permission or consent. The Debtors also failed to maintain any records of the sales as required by the Security

Agreement. Debtors attempted to convert to Chapter 13 on July 10, 1987.

This debt, stipulated to be $50,000 in the Agreed Order, was deemed nondischargeable. In the same Order, Debtors withdrew their request for conversion to Chapter 13.

5. Debtors filed for relief under Chapter 13 of the United States Bankruptcy Code on April 4, 1988, listing as unsecured debt $47,836.44 owed to Bank and $767 priority claim owed to the Love County Treasurer.

6. Under the Chapter 13 Plan, Debtors propose to pay $100 per month for thirty-six (36) months to Bank. Debtors' income is estimated at $1,200 per month, with $1,096 in living expenses. Debtor/husband will work in public relations for an automobile auction while Debtor/wife will work as a housewife.

7. Debtors moved for confirmation of this Plan with Bank objecting on the grounds that the Plan is not offered in good faith.

### CONCLUSIONS OF LAW

A. Confirmation of any Chapter 13 Plan is contingent upon the satisfaction of 11 U.S.C. § 1325. Specifically, the only provision at issue in this case is § 1325(a)(3) which requires that "The Plan has been proposed in good faith and not by any means forbidden by law."

Although many early cases determined that the mere act of filing a Chapter 13 Petition soon after receiving a Discharge under Chapter 7 constituted per se bad faith, most jurisdictions, including the Tenth Circuit, have adopted a "totality of the circumstances" flexible test for determining if bad faith exists. *Flygare v. Boulden*, 709 F.2d 1344 (10th Cir.1983); *Public Finance Corp. v. Freeman*, 712 F.2d 219 (5th Cir.1983); *Ravenot v. Rimgale*, 669 F.2d 426 (7th Cir.1982); *United States v. Estus*, 695 F.2d 311 (8th Cir.1982).

However, depending on the facts of the particular case, such a rapid, consecutive filing, often referred to as a "Chapter 20," may be considered as one factor in the totality analysis. *In re Baker*, 736 F.2d 481 (8th Cir.1984).

B. Generally the object of a bad faith inquiry is to "determine whether or not, considering all militating factors, there has been an abuse of the provisions, purpose or spirit of Chapter 13 in the proposal or Plan." *Deans v. O'Donnell*, 692 F.2d 968 (4th Cir.1982).

The good faith requirement contemplates "a broad judicial inquiry into the conduct and state of mind of a debtor, with reference to the proposal of the Plan." *In re Yavarkovsky*, 23 B.R. 756, 759 (Bankr.S.D. N.Y.1982). Included in such an inquiry is an examination of Debtor's pre-Petition culpability, which is not a basis, standing alone, for denying the benefits of the Chapter 13 bankruptcy laws, but is relevant in the totality of the circumstances. *Neufeld v. Freeman*, 794 F.2d 149 (4th Cir.1986).

C. Perhaps the most complete litmus analysis is found in *Flygare v. Boulden*, supra, wherein the Tenth Circuit outlined eleven factors to comprise the totality of the circumstances, no one of which is sufficient for a finding of bad faith, but combined may warrant such a finding. This case was cited by both parties in their respective Briefs and this Court finds it useful and binding on its decision.

The factors include:

1) The amount of the proposed payments and the amount of Debtor's surplus.

Although somewhat disputed by the Bank, Debtors appear to have stated reasonable expenses of $1,096 under the Plan. This leaves $100 for distribution under the Plan and a surplus of $3.83. However, this represents a total payment of $3,600 under the term of the Plan to satisfy a $50,000 unsecured indebtedness. The fact that this represents seven percent (7%) in de minimus payment to Bank in and of itself is not sufficient for a finding of "bad faith." However, it is a factor to be figured into the totality equation. *Barnes v. Whelan*, 689 F.2d 193 (D.D.C.1982).

2) The Debtor's employment history, ability to earn and likelihood of future increases in income.

Debtor has recently obtained employment with a newly established automobile auction at $300 per week. Testimony showed that the income for this new business is uncertain, thus Debtor's length of employment may be uncertain as well. Also, Debtor is responsible for his own expenses which he may incur in his employment. Any expense would be sufficient to undermine this Plan. The ability of Debtor to earn may be present, but the instability of his employment is disturbing and another factor in the totality.

3) The probable or expected duration of the Plan.

The Plan term of 36 months is a substantial effort.

4) The accuracy of the Plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the Court.

A question arises in the mind of the Court that Debtor's schedules list an unsecured debt to Bank of $47,836.44 when in fact the parties agreed to a settlement of $50,000 in Adversary No. 87–0036. However, Bank raises no objection and no intent to mislead the Court has been shown. It would appear to make little difference since full payment is not the objective of the Plan.

5) The extent of preferential treatment between classes of creditor.

This is inapplicable since Bank is the sole creditor.

6) The extent to which secured claims are modified.

Since the secured status of Bank was destroyed by the direct actions of Debtor, there are no secured creditors.

7) The type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7.

█ Bank's debt was deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(6) in the prior Chapter 7. The actions of the Debtor rendered the debt unsecured. No evidence has been presented that the funds derived from the sale of used automobiles were used to preserve assets or in anyway benefit the estate. The proceeds were willfully converted for the Debtor's use. Also, no records were kept during the disposal of the assets, creating further difficulty for Bank and suggesting concealment. Although it is true that "the mere fact that a debtor attempts to discharge a debt that would be nondischargeable under Chapter 7 is not sufficient in itself to warrant a finding that the Plan was not proposed in good faith," the fact that "the debt would be nondischargeable under Chapter 7 is a factor which is relevant to the determination of good faith." *In re Doersam,* 849 F.2d 237 (6th Cir.1987).

8) The existence of special circumstances such as inordinate medical expenses.

No special circumstances have been demonstrated.

9) The frequency with which the Debtor has sought relief under the Bankruptcy Reform Act.

The Debtors sought Chapter 13 relief soon after the filing of an Adversary Complaint to challenge the dischargeability of the debt at issue by filing a Motion to Convert. Conversion was denied pursuant to an Agreed Order filed by the parties wherein the debt was confessed nondischargeable. The Debtors then filed for Chapter 13 relief sometime later specifically to discharge the nondischargeable debt under Chapter 7. All other debts were discharged under the prior bankruptcy. Debtors have indeed taken considerable advantage of the Bankruptcy Code.

10) The motivation and sincerity of the Debtor in seeking Chapter 13 relief.

The sole and overriding purpose of this Bankruptcy is to discharge an otherwise nondischargeable debt. The debt owed to Bank represents 100% of the unsecured debt. This motivation and intention to escape nearly all liability of this debt "hardly comports with the true 'spirit and purpose' of Chapter 13." *In re Sanders,* 28 B.R. 917, 922 (Bankr.D.Kan.1983).

11) The burden which the Plan's administration would place upon the Trustee.

No inordinate burden shows itself.

In considering the totality of the circumstances, this Court looked to the past actions of the Debtors, as well as potentiality for the future. In balancing this with the above factors, this Court cannot find that this Plan has been offered in good faith. It would be in contravention of the spirit if not the purpose of Chapter 13 relief to ignore the cumulative effect of Debtors' actions.

IT IS THEREFORE ORDERED that Debtors' Chapter 13 Plan confirmation is denied and this case is dismissed pursuant to 11 U.S.C. § 1307(c)(5).