**In re DOTSON, David Wayne and Dotson, Carla Jo, Debtors.**

**Bankruptcy No. 90–02345–W.**

United States Bankruptcy Court, N.D. Oklahoma.

March 19, 1991.

Ty Stites, Tulsa, Okl., for debtor.

Mike Loyd, Bethany, Okl., for Chrysler Corp.

Robert J. Getchell, Tulsa Okl., for creditor, American Express Travel Related Services, Inc.

Jeffrey D. Lower, Tulsa Okl., for Creditor, Exchange Bank.

MEMORANDUM OPINION AND ORDER DENYING CONFIRMATION OF PLAN AND ORDER DISMISSING CASE

MICKEY DAN WILSON, Chief Judge.

This matter comes on for hearing this 15th day of March, 1991, the Debtor David Wayne Dotson appearing in person and through his attorney Ty Stites and the Debtor Carla Jo Dotson appearing not, and the Creditor American Express Travel Related Services, Inc. ("American Express") appearing through its attorney Robert J. Getchell, and the Creditor Exchange Bank appearing through its attorney Jeffrey D. Lower. Before the Court is the First Amended Plan of the Debtors, filed February 25, 1991, and the objection of American Express, filed February 19, 1991 which said objection was filed in regard to a previous plan filed by the Debtors, but the objections contained therein are asserted as objections to the plan of the Debtors filed February 25, 1991. This is a contested action as contemplated by Bankruptcy Rule 9014 and is a core proceeding.

STATEMENT OF FACTS

Prior to 1988 the Debtor David Dotson ("David") was self-employed and successful. The Debtor was in the business of operating a DOT One Hour Photo service and sold the same in 1987. In the year 1988 the Debtors traveled extensively,

from the Caribbean throughout the United States to Hawaii. After traveling for approximately one year, the Debtor David entered Spartan School of Aeronautics and graduated from said school in September of 1990 after approximately two years of schooling. The Debtor's schooling and living expenses were financed by student loans, by the employment of Ms. Dotson at St. John Medical Center from July of 1989 forward, and by credit card charges. Fifteen thousand dollars of indebtedness concerning student loans was incurred in the years 1989 and 1990. In July of 1990, the Debtor David was employed as a flight safety mechanic at $8.25 an hour. In anticipation of graduation from Spartan School of Aeronautics, the Debtor David anticipated a job with American Airlines as a mechanic, for which he had been trained by Spartan, at $9 to $13 an hour. In fact the Debtor learned, after graduation, that he was not qualified as a mechanic by American Airline's standards, as 36 months of apprenticeship was required before being an American Airlines mechanic. Debtor David terminated his job as a flight safety mechanic at $8.25 an hour to be employed by American Airlines at $5.43 an hour, in another capacity. Debtor David anticipated and hoped that American Airlines would take into consideration his work performance at his present job and thereafter upgrade him to a "mechanic," at a salary between $9 and $13 an hour.

In January of 1990 the Debtors purchased a 1989 Nissan 240 SX motor vehicle and in April of 1990 the Debtors purchased a 1990 Chrysler LeBaron motor vehicle. By virtue of the Debtors' plan filed February 25, 1991, the 1989 Nissan is to be surrendered in full satisfaction of the claim of Exchange Bank who holds a valid perfected purchase money security interest in the same. The Debtors desire to reaffirm the debt to Chrysler Credit Corporation which is secured by a security interest in the 1990 LeBaron (which includes the bifurcation of the Chrysler Credit claim from an amount owed of $12,500.00 into a secured claim in the sum of $10,300.00 and an unsecured claim in the amount of $2,200.00). Further, in anticipation of David's gradua-

tion from school, the Debtors in June of 1990 took a Caribbean cruise to Cancun, Cozemal and portions of Jamaica, the cost of which Caribbean cruise was charged to American Express Credit card and resulted in charges of approximately $7,279.00, as more fully shown by the statements of account for June and July of 1990.

Debtors' Amended Plan proposed 60 monthly payments at $350.00 each, which, if completed, will pay seventy-four dollars per month to unsecured creditors whose total claims amount to $46,446.00, which will result in a payback of 9.58%, with administrative costs and secured claims requiring the rest of the monthly payments.

American Express objects to the confirmation of this Plan and seeks dismissal of the case, showing to the Court that the Debtors filed their petition under Chapter 7 in this matter on August 15, 1990, and American Express timely filed its complaint alleging its indebtedness was an exception to the discharge as contemplated by 11 U.S.C. § 523(a)(2), and thereafter the Debtors, on December 17, 1990, converted the case to a case under Chapter 13; and this creditor asserts the conversion of this case was not proposed in good faith.

In summary, facts show that the Debtors sold their successful business in the year 1987 and thereafter traveled throughout the United States and other areas for one year, after which time the Debtor David entered Spartan School of Aeronautics; that the living expenses and cost of schooling were paid by student loans, the salary of Ms. Dotson and credit card charges; that in January of 1990 the Debtor purchased a 1989 Nissan 280 SX vehicle and financed the major portion of the same and in April of 1990 the Debtors purchased a 1990 Chrysler LeBaron and also financed the major portion of that vehicle; that in addition, the Debtors took a Caribbean cruise in June of 1990 the cost of which is approximately $7,200.00; that the Debtor David graduated from Spartan School of Aeronautics in September of 1990, about two weeks after the filing of this bankruptcy on August 15, 1990, and after a complaint filed in the Chapter 7 concerning the

dischargeability of the debt of American Express, the Debtors converted this case to a case under Chapter 13 on December 17, 1990.

The schedules of the Debtors and testimony adduced at trial show the Debtors would be unable to make monthly payments on their debts when these debts were incurred, and even assuming David received a position with American Airlines at $13.00 an hour, considering the purchase of the vehicles, the credit card charges and student loans.

The United States Tenth Circuit Court of Appeals has given this Court substantial guidance in "good faith" matters. In *Flygare v. Bolden*, 709 F.2d 1344 (10th Cir. 1983), the court adopted criteria used to determine whether a plan is proposed in good faith and the court stated,

> Certainly an important factor the courts must weigh in their analysis is the percentage of payment to unsecured creditors which the plan proposes. A low percentage proposal should cause the courts to look askance at the plan since repayment is one purpose of a Chapter 13 plan. However, the amount of the proposed repayment to unsecured creditors is only one of the many factors which the courts must consider in determining whether the plan meets the statutory good faith requirement. Other factors or exceptional circumstances might exist which would preclude a finding of bad faith even though only a nominal repayment to unsecured creditors is proposed.

*Id.* at 1347 (citations omitted).

The court then proceeded to list the factors necessary to determine whether a plan is proposed in bad faith, as follows:

(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and

(11) the burden which the plan's administration would place upon the trustee.

*Id.* at 1347, 1348 (citations omitted).

Recently, in the case of *In re Rasmussen*, 888 F.2d 703 (10th Cir.1989) involving a "Chapter 20" scenario, the court again discussed § 1325(a)(3) and stated,

> This circuit has rejected a per se bad faith standard, holding instead that bad faith is to be judged by the totality of the circumstances, on a case by case basis.... Other circuits have rejected a per se bad faith standard in favor of a "totality of circumstances" approach (citations omitted); and

> We agree with the Fourth Circuit in *Neufeld* [*v. Freeman*,] when it stated:

> [A]lthough the discharge of an obligation which would be nondischargeable in Chapter 7 is not, standing alone, a sufficient basis on which to find bad faith or deny confirmation, it is a relevant factor to be considered in the § 1325(a)(3) good faith inquiry. Resort to the more liberal discharge provisions of Chapter 13, though lawful in itself, may well signal an "abuse of the provisions, purpose, or spirit" of the Act, especially where a major portion of the claims sought to be discharged arises out of pre-petition fraud or other wrongful conduct and the debtor proposes only minimal repayment of these claims under the plan. Similar-

ly, a Chapter 13 plan may be confirmed despite even the most egregious prefiling conduct where other factors suggest that the plan nevertheless represents a good faith effort by the debtor to satisfy his creditors' claims.

This approach is not at cross-purposes with the admittedly liberal provisions of Chapter 13, under which debts resulting from illegal acts such as embezzlement, fraud, and willful and malicious injury, ordinarily may be discharged. Rather, it ensures against manipulation of the statute by debtors who default on obligations grounded in dishonesty and who subsequently seek refuge in Chapter 13 in order to avoid at minimal cost, a non-dischargeable debt. 794 F.2d [149] at 152–53 [4th Cir.1986]; *see also Fidelity & Casualty Co. of N.Y. v. Warren (In re Warren)*, 89 B.R. 87, 90–91 (9th Cir. BAP 1988); *Johnson v. Vanguard Holding Corp. (In re Johnson)*, 708 F.2d 865, 868 (2d Cir.1983).

In *In re Warren*, 89 B.R. 87 (9th Cir. BAP 1988), the court observed that "Chapter 13 was designed with an emphasis on debt repayment … as a basic policy goal of Chapter 13," *id.* p. 92; that the need to establish good faith is especially urgent "when a 'superdischarge' is sought," *id.* p. 98, i.e. when a debt not dischargeable in Chapter 7 is proposed to be discharged in Chapter 13; and that in such a case even debtor's "best effort" under Chapter 13 may not be enough to establish good faith, *id.* pp. 93–99. This Court agrees.

In addition, in the recent United States Supreme Court case of *Grogan v. Garner*, 498 U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), Justice Stevens, in delivering the opinion for a unanimous Court which determined the standard of proof in a non-dischargeability action, reaffirmed the "honest but unfortunate debtor" criteria previously set forth by the Supreme Court, when at 498 U.S. pp. ——, 111 S.Ct. p. 659, 112 L.Ed.2d pp. 764–765 he stated,
 … This Court has certainly acknowledged that a central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy "a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 78 L.Ed. 1230, 54 S.Ct. 695 [699] (1934). But in the same breath that we have invoked this "fresh start" policy, we have been careful to explain that the Act limits the opportunity for a completely unencumbered new beginning to the "honest but unfortunate debtor." *Ibid.*

In comparing the factual situation in this matter with the *Flygare v. Bolden* criteria, the Court notes that the Debtor's employment history and his ability to earn and the likelihood of future increases in income, and his ability to in fact make substantially more salary at a job previously terminated, are factors to be considered. In addition, the preferential treatment between creditors is an important factor, and the Court notes with interest that the Chrysler Credit claim is modified as to the negotiated interest rate and the payments on that motor vehicle are approximately 60% of the Plan payment. Of great importance are the types of debts discharged, and the Court notes with interest the present treatment of student loans in cases of this type by virtue of Public Law 101–508, effective November 5, 1990, which effectively holds student loans to be nondischargeable in a Chapter 13, a change in the law which reflects the intent of Congress prior to the enactment of this 1990 amendment. Also of great importance are the special circumstances involved in this matter wherein the Debtor filed bankruptcy concerning said student loans even before the first installment payment was due on the student loan. Concerning the motivation of the Debtors in this matter, such as the purchase of a luxury automobile and another new automobile seven months and five months, respectively, preceding the filing of the bankruptcy petition, and the substantial charges in June and July of 1990 concerning the "Caribbean cruise," the Court finds that the Debtors are not possessed of the good faith intent contemplated by Chapter 13. The purpose of Chapter 13 is debt repay-

**840**

ment, not debt avoidance. The Court must consider the pre-petition effort to pay debts along with the post-petition effort to pay debts. In this case, there obviously has been no pre-petition effort to pay the student loans ($15,000.00) as the same were not yet due. This certainly is a criterion to be considered as an indication of bankruptcy financial planning and, again, as evidence of the Debtors' intent to attempt a debt avoidance plan as compared with a debt repayment plan.

Accordingly, under the totality of the circumstances, this Court concludes that the Debtors' Chapter 13 filing was not made in good faith, and the motion of American Express to dismiss this case is granted. The foregoing shall constitute the findings of fact and conclusions of law as contemplated by F.R.B.P. 7052. This case is hereby dismissed.

AND IT IS SO ORDERED.