**In re William Henry RISTIC, Debtor.**

**Bankruptcy No. 91–07161–JES.**

United States Bankruptcy Court,
E.D. Wisconsin.

July 6, 1992.

Paul G. Lazotte, Madison, Wis., for debtor.

Thomas J. King, Oshkosh, Wis., Chapter 13 Trustee.

Andrew M. Bath, Milwaukee, Wis., for Heritage Mut. Ins. Co.

John Robert Byrnes, Milwaukee, Wis., Asst. U.S. Trustee.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

On November 6, 1991, William Henry Ristic filed a chapter 13 petition. Thereafter, on December 24, 1991, Thomas J. King, the chapter 13 trustee, filed a motion to dismiss the chapter 13 case for the following reasons:

1. Lack of eligibility under 11 U.S.C. § 101(30) because Ristic is not an "individual with regular income," and

2. Lack of good faith in the plan as required under 11 U.S.C. § 1325(a).

Heritage Mutual Insurance Company ("Heritage"), Ristic's largest creditor, holding a claim of $124,482, also filed a motion for dismissal. Heritage claims that Ristic did not file either his chapter 13 petition or plan in good faith and, accordingly, asks that the case be dismissed for cause pursuant to § 1307(c). Heritage further asserts that Ristic is ineligible for chapter 13 relief because his unsecured debts exceed the $100,000 limitation prescribed under § 109(e). The United States Trustee supports both motions for dismissal. Briefs were submitted, and an evidentiary hearing was held on May 8, 1992.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

## FACTS

When Ristic filed his chapter 13 petition, he was incarcerated at the Kettle Moraine

Correctional Institute in Plymouth, Wisconsin. Later, on or about January 23, 1992, he was transferred to the Winnebago Correctional Center in Oshkosh, Wisconsin. He is currently serving a 7–year sentence for arson together with a concurrent 3–year sentence for burglary. His mandatory release date is June 19, 1994. Shortly before the May 8, 1992 evidentiary hearing, Ristic appeared before the parole board, which denied his request for an early release. He will again be eligible to appear before the parole board in November, 1992.

Ristic's convictions resulted from an incident on October 21, 1989 when he burglarized and set fire to the Brass Light Gallery located at 131 South First Street, Milwaukee, Wisconsin. The business was owned and occupied by his former brother-in-law, Steven Kaniewski. Ristic formerly worked at this establishment. The fire caused substantial damage, and Heritage, as the insurance carrier for Kaniewski, paid out $124,482 under its fire insurance policy. Kaniewski's policy contained a $1,000 deductible clause, and as a result, he holds a claim against Ristic for that amount. As part of his criminal sentence, Ristic was ordered to make restitution to Kaniewski for $1,000.[1] The claims of Heritage and Kaniewski are listed in Ristic's bankruptcy schedules. The only other claim listed in Ristic's bankruptcy schedules is that of Tania Ristic, his former spouse, for past due child support in the sum of approximately $3,000. Although the criminal court records reflect that Ristic pleaded guilty to the criminal charges, he now claims that this plea was actually "no contest" and that he is attempting to have the criminal records corrected.

On June 26, 1991, Heritage commenced a civil suit in Milwaukee County Circuit Court against Ristic to recover its damages. That suit is now pending. Ristic is challenging this suit both with respect to liability and damages. He filed an answer and motion for appointment of counsel. The motion for appointment of counsel was denied. On September 19, 1991, a scheduling conference was held in connection with this civil suit, and a trial date was set for January 24, 1992. On October 11, 1991, Heritage filed a motion for summary judgment. Ristic responded by filing a petition for *writ of habeas corpus ad testificandum* which was denied on November 5, 1991. Ristic was then directed by the circuit court judge to respond to Heritage's motion for summary judgment within 15 days. Instead of responding, he filed this chapter 13 petition on November 6, 1991, which stayed Heritage's civil litigation against him.

Ristic's plan originally extended over three years but was later changed to the maximum 5–year term. The plan provides for payments of $15 per month, which he states constitutes his entire disposable income. Under his plan, 10% ($1.50 per month) is to be allocated for trustee's fees. The balance ($13.50 per month) is to be allocated among his unsecured creditors. Ristic has also proposed to pay into his plan any additional disposable income he may later receive after his release from prison. As of the evidentiary hearing, Ristic has paid $140 into the plan.

When Ristic filed his chapter 13 petition, his source of income was a 28¢ hourly stipend he received for attending classes at the Kettle Moraine Correctional Institute. After his transfer to the Winnebago Correctional Center, he was assigned work in the maintenance department with pay of 47¢ per hour.[2] His gross income is approximately $140 per month, and net income (after deducting his personal expenses and a mandatory 15% payment into his release account) is approximately $100 per month.

## GOOD FAITH

■ An instructive body of case law has gradually developed in the Seventh Circuit on good faith in chapter 13 cases, beginning with *In re Rimgale*, 669 F.2d 426 (7th Cir.1982) and followed by *In re Smith*, 848 F.2d 813 (7th Cir.1988); *In re Schaitz*, 913

---

1. Nothing in the criminal sentence requires Ristic to make restitution to Heritage.

2. On June 17, 1992, the court received written notification from the debtor's attorney that the debtor was transferred to the Drug Abuse Correctional Center, Winnebago, Wisconsin.

F.2d 452 (7th Cir.1990); and, most recently, *In re Love,* 957 F.2d 1350 (7th Cir.1992). *Rimgale, Smith* and *Schaitz* all involved good faith in the context of confirmation of a chapter 13 plan. *Love* differs in that it involved good faith in the context of the chapter 13 petition. There is no bright line rule for good faith. It is neither defined in the Bankruptcy Code nor in its legislative history. *In re Smith,* 848 F.2d at 817. Good faith is fact intensive and requires a case-by-case analysis. The court must ultimately make a common sense judicial determination based upon the "totality of the circumstances" of the particular case involved. *In re Love,* 957 F.2d at 1355; *In re Smith,* 848 F.2d at 816, n. 3.

■ While differences exist in a good faith analysis of a chapter 13 petition and a good faith analysis of a chapter 13 plan, there is also considerable overlap. *In re Smith,* 848 F.2d at 816, n. 3. *In re Love,* 957 F.2d at 1360. Many, if not all, of the factors which are considered in making a good faith analysis of the plan also apply to a good faith analysis of the petition. This is particularly so where, as here, the petition and plan are filed together. The same underlying policy embodies both good faith evaluations. That policy is to determine if, under all of the circumstances of the case, there has been an abuse of the provisions, purpose or spirit of chapter 13. *In re Love,* 957 F.2d at 1357. *In re Rimgale,* 669 F.2d at 431. The burden of proof is upon the debtor to establish confirmation of a good faith plan under § 1325. The burden of proof is upon the objector to show a lack of good faith in the filing of the chapter 13 petition sufficient to warrant dismissal for cause under § 1307(c).

The "totality of the circumstances" test involves a nonexclusive list of factors, none of which is by itself controlling. These factors, as applied to the chapter 13 petition, are set forth in *In re Love,* 957 F.2d at 1357, as follows:

1. The nature of the debt, including the question of whether the debt would be dischargeable in a chapter 7 proceeding;

2. The timing of the petition;

3. How the debt arose;

4. The debtor's motive in filing the petition;

5. How the debtor's actions affected creditors;

6. The debtor's treatment of creditors both before and after the petition was filed; and

7. Whether the debtor has been forthcoming with the bankruptcy court and the creditors.

■ The good faith factors in connection with the chapter 13 plan are described in *In re Schaitz,* 913 F.2d at 455–56; *In re Rimgale,* 669 F.2d at 432; and *In re Smith,* 848 F.2d at 817–18; as follows:

1. Does the proposed plan state the debtor's secured and unsecured debts accurately?

2. Does it state the debtor's expenses accurately?

3. Is the percentage of repayment of unsecured claims correct?

4. If there are or have been deficiencies in the plan, do the inaccuracies amount to an attempt to mislead the bankruptcy court?

5. Do the proposed payments indicate "a fundamental fairness in dealing with one's creditors."

The "fundamental fairness" factor is more appropriately a determination which is reached after a review of all of the other factors involved and is the most compelling of all of the factors. *In re Schaitz,* 913 F.2d at 453; *In re Love,* 957 F.2d at 1357.

■ The court fully recognizes, as stated in *In re Belt,* 106 B.R. 553, 569 (Bankr.N.D.Ind.1989), that even the most egregious pre-petition misconduct does not necessarily preclude good faith. Such pre-filing conduct must be accompanied by other factors which suggest that the plan, nevertheless, represents a good faith effort by the debtor to satisfy his creditors' claims. *In re LeMaire,* 898 F.2d 1346, 1352 (8th Cir.1990) (quoting from *Neufeld v. Freeman,* 794 F.2d 149, 153 (4th Cir.1986)). On the other hand, even the most herculean efforts by a debtor to persuade a court that his petition and plan are in good faith may fail where the overall picture demonstrates

a lack of such good faith. *Matter of Jones*, 119 B.R. 996, 1003 (Bankr.N.D.Ind.1990).

■ Ristic has accurately stated his debts, assets and liabilities and, in this regard, has been forthcoming with the court.[3] Ristic proposes to pay into his plan all of his disposable income. Nonetheless, these considerations are heavily outweighed by other countervailing factors. Honesty alone does not establish good faith. *SouthTrust Mobile Services Inc. v. Englebert*, 137 B.R. 975, 988 (N.D.Ala.1992). This court is persuaded that Ristic's primary motivation is not to satisfy his obligation to Heritage but, rather, to rid himself of this debt while he is incarcerated and receiving nominal income, which barely covers his personal expenses. The court accepts Ristic's assertion that he wants a fresh start. However, he is not guaranteed that result. Justice Stevens in *Grogan v. Garner*, —— U.S. ——, ——, 111 S.Ct. 654, 659, 112 L.Ed.2d 755, 764–65 (1991), reaffirmed the principle that the "fresh start" policy was intended for the "honest but unfortunate debtor." *See also In re Dotson*, 124 B.R. 836, 839 (Bankr. N.D.Okl.1991); *In re Brock*, 47 B.R. 167, 169–70 (Bankr.S.D.Cal.1985). Ristic does not fall within this class. This does not mean that he can never qualify for chapter 13 relief. It only means that, under his present circumstances, he should not be permitted to do so.

■ While this court has no desire to add to Ristic's plight (which he alone created), he should not be given an unintended advantage. The right to discharge a nondischargeable debt in a chapter 13 case is a privilege, not a right. *In re Schaitz*, 913 F.2d at 455. Ristic knows full well that, while he is in prison, he is, for all intents and purposes, immune from collection proceedings by Heritage or any other creditors because of his lack of any meaningful income or assets. It is precisely because of these circumstances that Ristic's obligations for repayment on his past due child support to Tania Ristic and for restitution under the criminal order to Kaniewski were deferred until his release from prison. If Ristic's proposed plan is confirmed, it would lead to a bizarre result. His incarceration would give him a distinct advantage which he would not have had if he had been placed on probation and was earning considerably more money.

Ristic asserts that, because of the other obligations confronting him upon his release, his disposable income may be no greater than it is now. That argument is unconvincing. Ristic's current prison wages are 47¢ per hour as compared with the current minimum hourly wage of $4.25. Moreover, Ristic has substantial income potential. He earned $1,925 per month while at the Brass Light Gallery and $8 per hour while working at Excalibur Automobile Corporation in West Allis, Wisconsin. He is currently 15 credits short of obtaining an associate degree in liberal arts. He recently received a job offer as a dispatcher with a trucking firm, conditioned upon obtaining an early release from prison. This job would have paid him an annual salary of $18,000. With his skills, Ristic is capable of receiving substantially higher disposable income than he now receives.

Ristic, while apparently now genuinely remorseful for his actions, did display malicious intent when, motivated by revenge, he set fire to Kaniewski's building. He admitted that he has made no attempt to pay anything on his obligation to Heritage (even to the extent of making the minimal payments he is now proposing under his chapter 13 plan). He also acknowledged that he filed this chapter 13 petition because of the commencement by Heritage of its civil lawsuit against him. The timing of his chapter 13 petition—one day after being ordered by the circuit judge in Heritage's civil suit to respond to the summary judgment motion—is suspect.

Ristic knows that his debt to Heritage is nondischargeable in a chapter 7 case under § 523(a)(6) for willful and malicious injury to property of another. Other than the small unlisted debt to DePaul Hospital (*see* n. 3), the only party prejudiced by this

---

**3.** At the May 8, 1992 hearing, Ristic testified that he inadvertently omitted an unsecured debt to DePaul Hospital in the sum of $184. The court accepts his statement. This particular debt, being relatively minimal, has no bearing upon this decision.

chapter 13. petition is Heritage. Ristic's debts to Tania Ristic and Kaniewski remain nondischargeable whether this case is in chapter 13 or chapter 7. (§ 1328(a)(2) excepts from discharge support obligations, and § 1328(a)(3) excepts from discharge criminal restitution obligations.) Where bankruptcy proceedings will have a negative impact on only one creditor, this is an indication of unfairness. *In re Love,* 957 F.2d at 1359.

Another good faith consideration is the percentage of payments proposed to be made. In this case, they are minute. Heritage would be receiving only a fraction of 1% spread over five years without interest. While that alone is not conclusive on good faith, it is, nonetheless, a factor to be considered. *In re Jacobs,* 102 B.R. 239, 241 (Bankr.E.D.Okl.1988). Chapter 13 should not be interpreted to permit "manipulation" of the statute by debtors who default on obligations grounded in dishonesty and who subsequently seek refuge in chapter 13 in order to avoid, at minimal cost, a nondischargeable debt. *In re Love,* 957 F.2d at 1359; *In re Schaitz,* 913 F.2d at 455 (quoting *Neufeld,* 794 F.2d at 153). Even though Ristic is proposing under his plan to apply all of his disposable income into the plan, this alone does not mandate a finding of "good faith." While this meets the "best efforts" test under § 1325(b)(1)(B), good faith is separate and distinct from the best effort requirement. *In re Girdaukas,* 92 B.R. 373, 377 (Bankr.E.D.Wis.1988); *In re Warren,* 89 B.R. 87, 95 (Bankr. 9th Cir.1988); *In re Fischer,* 136 B.R. 819, 829 (D.Alaska 1992).

Ristic also states in his brief that Heritage is motivated by a desire to "put the screws" to him and "draw blood" from him. Despite these colorful expressions, this argument is unsupported by the record. Heritage is only seeking to minimize its loss. Ristic's situation is entirely different from, for example, that of a debtor who became destitute and incurred huge obligations because of severe medical problems or an injury sustained in an accident.

Finally, if this plan is confirmed, it would create an undue administrative burden upon the chapter 13 trustee because of the *de minimis* amount Ristic would be paying into the plan. Cherie Kuczynski, an assistant to the chapter 13 trustee, testified that the costs of maintaining this case will exceed the trustee's fees.

After weighing all of the factors, this court finds that Ristic's chapter 13 petition and plan fail to satisfy the good faith requirements. When Ristic is released from prison and obtains stable employment, he can then better gauge his situation. Nothing prevents him from filing a chapter 13 petition after he becomes re-established in society. The key inquiry, as stated by the Seventh Circuit in *In re Schaitz,* is:

> Is [the debtor] really trying to pay the creditors to the reasonable limit of his ability or is he trying to thwart them? A sincere effort of repayment is a *sine qua non* of good faith.

*In re Schaitz,* 913 F.2d at 453–54.

This case represents an attempt to manipulate the Bankruptcy Code for the primary purpose of discharging the debt to Heritage which is clearly nondischargeable under chapter 7.

### ELIGIBILITY

For the sake of argument only, even if Ristic convinced the court that his petition and plan met the good faith criteria, his chapter 13 case must still be dismissed. He is ineligible for chapter 13 relief because:

1. His total noncontingent liquidated and unsecured debts exceed the $100,000 debt limitation and

2. He fails to meet the "regular income" requirement.

#### *Debt Limitation*

Under § 109(e) of the Code, the debt limitation for chapter 13 eligibility of noncontingent liquidated and unsecured debts is "less than $100,000." Heritage's claim against Ristic, being $124,482, exceeds that amount, unless Ristic establishes that this claim is not noncontingent or liquidated. The fact that Ristic listed his debt to Heritage as "disputed" is of no import. A disputed unsecured debt which is also liquidated and noncontingent is included in arriving at the $100,000 ceiling. *Gould v. Gregg, Hart, Farris & Rutledge,*

137 B.R. 761 (W.D.Ark.1992). *See also In re Pennypacker*, 115 B.R. 504, 506 (Bankr. E.D.Pa.1990); *In re Sylvester*, 19 B.R. 671, 673 (Bankr. 9th Cir.1982); *Matter of McGovern*, 122 B.R. 712, 715 (Bankr.N.D.Ind. 1989); *In re Crescenzi*, 53 B.R. 374, 381 (Bankr.S.D.N.Y.1985) (aff'd 69 B.R. 64 (S.D.N.Y.1986)).

Heritage's claim is noncontingent. All of the events upon which the liability is based occurred before Ristic filed his chapter 13 petition. The fact that the debt was not reduced to judgment before the chapter 13 petition was filed does not make the debt contingent. *In re Loya*, 123 B.R. 338, 340 (Bankr. 9th Cir.1991). *Loya* further holds that, where a debt arises out of a tort, it is not necessarily contingent. *See also Matter of McGovern*, 122 B.R. at 716.

Ristic's debt to Heritage is also liquidated. *In re Sylvester*, 19 B.R. at 673, states:

> The concept of liquidation has been variously expressed. The common thread ... has been ready determination and precision in computation of the amount due.... Some cases have stated the test as whether the amount due is capable of ascertainment by reference to an agreement or by simple computation.

In the case at bar, only property damages are involved. While certain types of damages cannot be readily computed because they involve pain and suffering, permanent injury or punitive damages, that is not the situation here. Heritage's claim became liquidated when it paid $124,482 to Kaniewski.

### INDIVIDUAL WITH REGULAR INCOME

Under § 109(e), only an individual with regular income qualifies as a chapter 13 debtor. § 101(30) defines an "individual with regular income" as "an individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13." Although the definition of an individual with regular income is broad, there are, nonetheless, limitations. Ristic has no control over the work he is assigned while in prison or whether such work will continue. He lacks the steady and reliable source of income needed to fund his chapter 13 plan. In order for income to be "sufficiently stable and regular," it must be an income stream that is to a substantial degree reliable and certain in amount and sufficient to fund payments for the term of the plan. It must, therefore, be reasonably predictable and dependable. *See In re Hickman*, 104 B.R. 374, 376 (Bankr.D.Colo.1989). That is not the case here.

### CONCLUSION

Based upon the totality of the circumstances of this particular case, Ristic has not met the good faith criteria under § 1325(a)(3) with respect to his petition and plan. Therefore, his chapter 13 case must be dismissed for cause pursuant to § 1307(c). Ristic is also presently ineligible for chapter 13 relief because his total noncontingent, liquidated unsecured debts are greater than $100,000 and because he does not meet the "regular income" requirement. For all of these reasons, the motions of the chapter 13 trustee and Heritage are sustained. An order will be entered dismissing this case.

This decision shall constitute this court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.